UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ENBRIDGE ENERGY, LIMITED
PARTNERSHIP, ENBRIDGE ENERGY
COMPANY, INC., and ENBRIDGE
ENERGY PARTNERS, L.P.,

No. 1:20-cv-01141-JTN-RSK

HON. JANET T. NEFF

     Plaintiffs,

v

GRETCHEN WHITMER, the Governor
of the State of Michigan in her official
capacity, and DANIEL EICHINGER,
Director of the Michigan Department of
Natural Resources in his official
capacity,

     Defendants.

_____

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS**

Robert P. Reichel (P31878)
Daniel P. Bock (P71246)
Assistant Attorneys General
Attorneys for Defendants
Michigan Department of
Attorney General
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
ReichelB@michigan.gov
BockD@michigan.gov

Dated:  January 18, 2022

# TABLE OF CONTENTS

<u>Page</u>

Index of Authorities .................................................................................................. ii

Concise Statement of Issues Presented and Controlling or Most
AppropriateAuthority ............................................................................................ v

Introduction .......................................................................................................... 1

Procedural Background ......................................................................................... 2

Legal Standards ................................................................................................... 4

Argument ............................................................................................................. 5

I.    This Court should address this motion before Enbridge's summary
      judgment motion. ......................................................................................... 6

II.   This Court should dismiss Enbridge's *Ex parte Young* claims .......................... 8

      A.   *Ex Parte Young* Provides Only a Limited Exception to
           Michigan's Eleventh Amendment Sovereign Immunity ......................... 8

      B.   This action must be dismissed because Enbridge seeks relief
           that would interfere with Michigan's special sovereignty
           interests in its submerged bottomlands. .......................................... 10

           1.   The *Coeur d'Alene* Limitation ................................................... 10

           2.   This action falls squarely within the *Coeur d'Alene*
                limitation ................................................................................. 12

      C.   This action must be dismissed because Enbridge seeks relief
           that would compel Michigan's specific performance of a contract. ...... 16

Conclusion .......................................................................................................... 19

# INDEX OF AUTHORITIES

<u>Page</u>

**Cases**

*Amini v. Oberlin College,*
    259 F.3d 493(6th Cir. 2001) ........................................................................ 10

*Arnett v. Myers,*
    281 F.3d 552 (6th Cir. 2002) .................................................................. 19, 20

*Bickerstaff v. Lucarelli,*
    830 F.3d 388 (6th Cir. 2016) ....................................................................... 10

*Brownback v. King,*
    141 S. Ct. 740(2021) ...................................................................................... 9

*Cf. Morse v. Frederick,*
    551 U.S. 393(2007) ..................................................................................... 12

*Children's Healthcare is a Legal Duty, Inc. v. Deters,*
    92 F.3d 1412 (6th Cir. 1996) ....................................................................... 14

*Coeur d'Alene Tribe of Idaho,*
    521 U.S. 261 (1997) ............................................................................. passim

*Directv, Inc. v. Treesh,*
    487 F.3d 471 (6th Cir. 2007) ....................................................................... 10

*Doe v. DeWine,*
    910 F.3d 842 (6th Cir. 2018) ......................................................................... 9

*Edelman v. Jordan,*
    415 U.S. 651 (1974) ..................................................................................... 21

*Ex parte Young,*
    209 U.S. 123 (1908) ............................................................................. passim

*Glass v. Goeckel,*
    703 N.W.2d 58, (Mich. 2005) ................................................................. 8, 18

*Hagood v. Southern,*
    117 U.S. 52 (1886) ................................................................................ 21, 22

*Hamilton v. Myers,*
    281 F.3d 520 (6th Cir. 2002) ................................................................. 20

*Illinois Central Railroad Co. v. State of Illinois,*
    146 U.S. 387 (1892) ........................................................................... 18

*In re Ayers,*
    123 U.S. 443 (1887) ................................................................ 12, 21, 22

*Kootenai Envtl. All., Inc. v. Panhandle Yacht Club, Inc.,*
    671 P.2d 1085 (Idaho 1983) ................................................................ 18

*Lessee of Pollard v. Hagan,*
    3 How. 212 (1845) .............................................................................. 16

*Lighthouse Res, Inc. v. Inslee,*
    No. 3:18-CV-05005-RJB, 2018 U.S. Dist. LEXIS 181862 (W. D. Wash. Oct.
    23, 2018) ........................................................................................... 20

*MacDonald v. Village of Northport,*
    164 F.3d 964 (6th Cir. 1999) ......................................................... 18, 19

*Martin v. Lessee of Waddell,*
    16 Pet. 367 (1842) ............................................................................. 16

*McDonough Assocs., Inc. v. Grunloh,*
    722 F.3d 1043 (7th Cir. 2013) ............................................................ 24

*Mezibov v. Allen,*
    411 F.3d 712 (6th Cir. 2005) .............................................................. 10

*Moir v. Greater Cleveland Reg'l Transit Auth.,*
    895 F.2d 266 (6th Cir. 1990) ................................................................ 9

*O'Bryan v. Holy See,*
    556 F.3d 361, 376 (6th Cir. 2009) ...................................................... 10

*Obrecht v. Nat'l Gypsum Corp.,*
    105 N.W2d 143 (Mich. 1960) .............................................................. 18

*P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,*
    506 U.S. 139 (1993) ........................................................................... 12

*Papasan v. Allain,*
    478 U.S. 265(1986) ..................................................................... 10, 14

*PDK Lab'ys, Inc. v. DEA,*
    362 F.3d 786 (D.C. Cir. 2004) .................................................................. 12

*Pennhurst State Sch. & Hosp. v. Halderman,*
    465 U.S. 89(1984) ....................................................................... 7, 14, 19, 23

*Sinochem Int'l Corp. v. Malaysia Int'l Shipping Corp.,*
    549 U.S. 422 (2007) ..................................................................................... 11

*Tamiami Partners v. Miccosukee Tribe of Indians of Fla.,*
    177 F.3d 1221 (11th Cir. 1999) .................................................................. 24

*United States v. Ritchie,*
    15 F.3d 592 (6th Cir. 1994) .......................................................................... 9

*Va. Off. for Prot. & Advocacy v. Stewart,*
    563 U.S. 247 (2011) ............................................................................ passim

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,*
    535 U.S. 635 (2002) ..................................................................................... 11

*Waterfront Commission of New York Harbor v. Murphy,*
    961 F.3d 234 (3d Cir. 2020), *cert. denied,* 142 S. Ct. 561 (2021) ...................... 22, 23

*Weiner v. Klais & Co.,*
    108 F.3d 86 (6th Cir. 1997) ........................................................................ 10

*Whole Woman's Health v. Jackson,*
    142 S. Ct. 522 (2021) ............................................................................. 6, 14

## Rules

Fed. R. Civ. P. 12(b)(1) .......................................................................... 6, 9, 24

Fed. R. Civ. P. 12(b)(6) .......................................................................... 6, 9, 24

Fed. R. Civ. P. 12(h)(1) .............................................................................. 11

**CONCISE STATEMENT OF ISSUES PRESENTED AND CONTROLLING OR MOST APPROPRIATE AUTHORITY**

This statement is provided under Local Civil Rule 7.1(a).  This Court should dismiss this action with prejudice under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Enbridge's *Ex parte Young* claims are insufficiently pled and are therefore barred by Michigan's Eleventh Amendment immunity for two independent reasons:

1.      Enbridge improperly seeks relief that would invade Michigan's special sovereignty interests in its submerged bottomlands.  *See generally Idaho v. Coeur d'Alene Tribe of Idaho* (*Coeur d'Alene*), 521 U.S. 261 (1997).

2.      Enbridge improperly seeks relief that "would operate against [Michigan]", the "real, substantial party in interest," *see Pennhurst State Sch. & Hosp. v. Halderman* (*Pennhurst*) (quotations omitted), 465 U.S. 89, 101 (1984), by effectively compelling the state's specific performance with a contract, *see Va. Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 257 (2011).

## INTRODUCTION

This Court should dismiss this action with prejudice under Fed. R. of Civ. P. 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction and failure to state a claim.  Enbridge's official-capacity claims[1] against Michigan Governor Gretchen Whitmer and Michigan Department of Natural Resources Director Daniel Eichinger (collectively, the "Michigan Officials") are barred by Michigan's Eleventh Amendment sovereign immunity.

Enbridge attempts to invoke the *Ex parte Young* exception to Eleventh Amendment immunity.  *See Ex parte Young,* 209 U.S. 123 (1908).  The *Ex parte Young* doctrine provides a "narrow exception" to Eleventh Amendment immunity that "allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law."  *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021). Because *Ex parte Young* is narrow and inherently impinges on the sovereign authority of the states, courts must "police abuses of the doctrine that threaten to evade sovereign immunity."  *Va. Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 257 (2011).

---

[1] In this action and others, Enbridge Energy, L.P., Enbridge Energy Company, Inc., and Enbridge Energy Partners, L.P. have acted as if they were a single corporate entity, and the Plaintiffs' allegations and arguments are identical for the purposes of this motion.  This brief follows that convention for convenience's sake and refers to the Plaintiffs collectively as "Enbridge."  The Michigan Officials do not waive any arguments or rights based on the Enbridge entities' corporate separateness.

Enbridge cannot state claims against the Michigan Officials under *Ex parte Young* here for two reasons that each independently warrant dismissal of all claims. First, the relief Enbridge seeks would improperly invade Michigan's special sovereignty interests in its submerged bottomlands. *See generally Coeur d'Alene*, 521 U.S. 261. Second, Enbridge seeks relief that would improperly "operate against [Michigan]", the "real, substantial party in interest," *see Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101 (1984) (quotations omitted), by effectively compelling the state's specific performance with a contract, *Stewart*, 563 U.S. at 257.[2]

## PROCEDURAL BACKGROUND

This action arises from a contract and property dispute between Enbridge and Michigan. Michigan owns the submerged bottomlands of the Straits of Mackinac that connect Lakes Huron and Michigan. (ECF No. 1-1, PageID.43.)[3] Under Michigan's public trust doctrine, the public has inalienable and perpetual

---

[2] This motion focuses on threshold defects that defeat Enbridge's *Ex parte Young* claims. It does not reach the merits, i.e., whether federal law preempts the Michigan Officials' determinations with respect to Enbridge and the pipelines at issue. The Court should never reach Enbridge's summary judgment motion because Enbridge's complaint should be dismissed, but the Michigan Officials will explain why the claims fail on the merits in their opposition to that motion if the Court does consider it.

[3] Citations in this brief are made to the Bates-stamped page numbers created by the CM/ECF system, not to any internal page numbers.

rights to these bottomlands.  *E.g.*, *Glass v. Goeckel*, 703 N.W.2d 58, 64–66, 73–74 (Mich. 2005).

In 1953, Michigan, through its Conservation Commission, purported to contract with the Lakehead Pipe Line Company to grant an easement to it, subject to numerous terms and conditions (the "1953 Easement").  (ECF No. 1-1, PageID.43–55.)  The 1953 Easement claims to authorize its holder to build and operate two 20-inch-diameter pipelines on the bottomlands of the Straits (the "Straits Pipelines").  (*See id.* at PageID.44.)  The Straits Pipelines constructed pursuant to the 1953 Easement would become part of a 645-mile-long pipeline, which today is owned by Enbridge and known as Line 5.  (*See* Compl. ¶¶ 16–17, ECF No.1, PageID.4.)

In November 2020, Michigan issued a *Notice of Revocation and Termination of Easement* ("November 2020 Notice," or "Notice") to Enbridge. (ECF No. 1-1, PageID.22–41.)  The Notice, which the Michigan Officials signed, revoked the 1953 Easement because it was not a valid conveyance and because the Straits Pipelines' continued operation violated the public trust.  (*Id.* PageID. 25–30.)  The Notice also terminated the 1953 Easement because Enbridge had committed numerous, uncorrectable violations of its terms and conditions.  (*Id.* PageID.33–40.)  The Notice directed Enbridge to cease operating the Straits Pipelines within 180 days and then decommission it. (*Id.* PageID.41)

Enbridge filed this action eleven days after the Notice issued.  (ECF No. 1.) In the thirteen months since, Enbridge has ignored the Notice and continued to operate the Straits Pipelines.

**LEGAL STANDARDS**

The Michigan Officials move to dismiss under Fed. R. C. P. 12(b)(1) and 12(b)(6).  Both rules apply because if Enbridge fails to state viable *Ex parte Young* claims under Rule 12(b)(6), the Michigan Officials are entitled to Eleventh Amendment immunity, and this Court lacks subject-matter jurisdiction under Rule 12(b)(1).  *See Doe v. DeWine*, 910 F.3d 842, 848 (6th Cir. 2018) (Eleventh Amendment implicates subject-matter jurisdiction).[4]

Under Rule 12(b)(1), the Michigan Officials assert what is referred to as a "facial attack" on the court's subject-matter jurisdiction over Enbridge's claims, "challeng[ing] the sufficiency of the pleading itself."  *See United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  Enbridge, as Plaintiff, "has the burden of proving jurisdiction in order to survive the motion."  *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).  In a facial attack, "the court must take the material allegations of the [complaint] as true and construed in the light most

---

[4] "[W]here a plaintiff fails to plausibly allege an element that is both a merit element of a claim and a jurisdictional element," a court may dismiss under Rules 12(b)(1), 12(b)(6), or both, because "[t]he label does not change the lack of subject-matter jurisdiction, and the claim fails on the merits because it does not state a claim upon which relief can be granted."  *Brownback v. King*, 141 S. Ct. 740, 749 n.8 (2021).

4

favorable to the nonmoving party." *See id.*  "However, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *O'Bryan v. Holy See*, 556 F.3d 361, 376 (6th Cir. 2009) (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

The Michigan Officials also move to dismiss under Rule 12(b)(6) because Enbridge's complaint fails to state a claim upon which relief can be granted.  On a 12(b)(6) motion, this Court must "construe the complaint in the light most favorable to [Enbridge], accept its allegations as true, and draw all reasonable inferences in favor of [Enbridge]." *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But this Court "need not accept as true any conclusory legal allegations." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (quotation omitted).[5]

## ARGUMENT

The Supreme Court has stated that an *Ex parte Young* claim is barred if it "would stretch that case too far and would upset the balance of federal and state interests that it embodies," *Papasan v. Allain*, 478 U.S. 265, 277 (1986).  Enbridge's claims here stretch *Ex parte Young* past its breaking point for two reasons, both of which independently warrant dismissal.  Although the company nominally sues the

---

[5] Enbridge attached the 1953 Easement and the Notice to its complaint.  (ECF No. 1-1, PageID.22–41.)  These materials "are considered part of the pleadings" because "they are referred to in the plaintiff's complaint and are central to [its] claim."  *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)).

Michigan Officials, the requested relief (1) would invade Michigan's special sovereignty interests in its submerged bottomlands and (2) would effectively compel the state's specific performance of a contract.  Both outcomes impinge on the state's sovereign immunity under the Eleventh Amendment.

## I.    This Court should address this motion before Enbridge's summary judgment motion.

As an initial matter, this Court should resolve the Michigan Officials' motion to dismiss before considering Enbridge's motion for summary judgment, out of respect for both the Court's constitutionally limited subject-matter jurisdiction and Michigan's sovereign prerogatives.

Generally, a federal court must address threshold jurisdictional questions before reaching the merits of a case, to ensure that "any assumption by the court of substantive law-declaring power" is within its constitutional authority.  *See Sinochem Int'l Corp. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31, 433 (2007) (cleaned up).  This motion concerns the non-merits, jurisdictional issue of "whether suit lies under *Ex parte Young*" at all, *see Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 646 (2002), whereas Enbridge's summary judgment motion will address the merits of whether federal law in fact preempts the Michigan Officials' conduct (*see* Enbridge's request for a pre-motion conference, ECF No. 39).  The Court must therefore resolve the former issue and determine that it has jurisdiction before it can examine the merits.  *See, e.g.*, Fed. R. Civ. P. 12(h)(1) ("If

the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Respecting this sequence is especially important here, because of the "indignity of subjecting [Michigan] to the coercive process of [a] judicial tribunal[] at the instance of [a] private part[y]." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (quoting *In re Ayers*, 123 U.S. 443, 505 (1887)). Michigan has not waived its immunity to suit, and the Eleventh Amendment demands that the Court must not "adhere to an empty formalism," *Coeur d'Alene*, 563 U.S. at 270, and assume jurisdiction simply because Enbridge has named the Michigan Officials as defendants rather than the state itself.

Moreover, the Court should resolve this motion first because it provides the narrowest and most straightforward path to resolving the dispute. *Cf. Morse v. Frederick*, 551 U.S. 393, 431 (2007) (Breyer, J., concurring in the judgment in part and dissenting in part) ("And the 'cardinal principle of judicial restraint' is that 'if it is not necessary to decide more, it is necessary not to decide more.'" (quoting *PDK Lab'ys, Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment))). In the interest of judicial economy and respect for state sovereignty, this motion should be resolved first.

II.    **This Court should dismiss Enbridge's *Ex parte Young* claims.**

A.    ***Ex Parte Young* Provides Only a Limited Exception to Michigan's Eleventh Amendment Sovereign Immunity.**

The Eleventh Amendment "enacts a sovereign immunity from suit" that prohibits Enbridge from suing Michigan unless and until Michigan waives that immunity.  *See Coeur d'Alene*, 521 U.S. at 267.  The Supreme Court has expressed for more than a century its "understanding of the Eleventh Amendment as reflecting a broader principle of sovereign immunity" that is "designed to protect" the "dignity and respect afforded a State" in our federal system.  *See id.* at 268. Such sovereign immunity "represents a real limitation on a federal court's federal-question jurisdiction" that cannot be "sacrificed to elementary mechanics of captions and pleading."  *Id.* at 270.

Enbridge invokes the *Ex parte Young* exception to Michigan's immunity. Under that exception, the Supreme Court held that "because an unconstitutional [state] legislative enactment is 'void,' a state official who enforces that law 'comes into conflict with the superior authority of the Constitution,' and therefore is 'stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct.'"  *Stewart*, 563 U.S. at 254 (quoting *Ex parte Young*, 209 U.S. at 159–60) (brackets omitted).  That is, the doctrine treats a state official's enforcement of a preempted or unconstitutional statute as not an act of the state, but rather an ultra vires act of the official outside their formal authority.  In that limited circumstance, *Ex parte Young* provides a "narrow exception" to Eleventh Amendment sovereign immunity "that allows certain private

parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." *Whole Woman's Health*, 142 S. Ct. at 532.

*Ex parte Young* permits only a "narrow" exception to Eleventh Amendment sovereign immunity and must be interpreted to preserve due respect owed to the states. *See Whole Woman's Health*, 142 S. Ct. at 532; *see also Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996) ("Courts have not read *Young* expansively."). The case's rationale relies on the "obvious fiction" that an injunction against a state executive's official acts is not an injunction against the state, when in reality "the State itself will have a continuing interest in the litigation whenever state policies or procedures are at stake." *Coeur d'Alene*, 521 U.S. at 269–70. The Supreme Court has thus repeatedly emphasized that courts applying *Ex parte Young* "must reflect a proper understanding of its role in our federal system and respect for state courts," *id.* at 270, and it should not be "provided an expansive interpretation." *Pennhurst*, 465 U.S. at 102. The doctrine is so narrow, in fact, that even if a case "formally meet[s] the *Young* requirements," it may be barred if it "would stretch that case too far and would upset the balance of federal and state interests that it embodies." *Papasan*, 478 U.S. at 277. Two limitations on *Young*'s scope apply here, each of which forecloses Enbridge's claims: the prohibition on claims that invade state sovereignty on submerged bottomlands and the prohibition against claims seeking specific performance.

**B.    This action must be dismissed because Enbridge seeks relief that would interfere with Michigan's special sovereignty interests in its submerged bottomlands.**

Enbridge's *Ex parte Young* claims are barred by the Eleventh Amendment and must be dismissed under Rule 12 because the broad relief the company requests would "divest the State of its sovereign control over submerged lands." *See Coeur d'Alene*, 521 U.S. at 283.  Enbridge seeks an order prohibiting the state from exercising its duties under the public trust doctrine and contractual rights under the 1953 Easement that relate to those submerged lands.  *Ex parte Young* prohibits such an "invasion of [Michigan's] sovereignty."  *See Stewart*, 563 U.S. at 257.

**1.    The *Coeur d'Alene* Limitation**

In *Coeur d'Alene*, 521 U.S. 261 (1997), the Coeur d'Alene Tribe of Idaho claimed ownership in certain submerged lands.  The tribe brought *Ex parte Young* claims against Idaho officials, seeking to restrain them from regulating or otherwise interfering with the tribe's use of the submerged lands.  *See id.* at 265. The Court held that these *Ex parte Young* claims were improper and affirmed the district court's decision dismissing them under Rule 12. *See id.* at 288.

The parts of Justice Kennedy's opinion that garnered a majority[6] emphasized the importance of the state's ownership of, and control over, submerged bottomlands.  "[T]he people of the Thirteen Colonies at the time of independence

_____

[6] Justice Kennedy announced the Court's judgment, but only parts of his opinion commanded a majority. *Coeur d'Alene*, 521 U.S. at 263–64.

'became themselves sovereign; and in that character hold the absolute right to all their navigable waters and the soils under them for their own common use, subject only to the rights since surrendered by the Constitution to the general government." *Id.* at 283 (quoting *Martin v. Lessee of Waddell*, 16 Pet. 367, 410 (1842)).  Under the Constitution, Idaho had entered the Union "on an 'equal footing' with the original States and so ha[d] similar ownership over these 'sovereign lands.'" *Id.* (quoting *Lessee of Pollard v. Hagan*, 3 How. 212, 228–29 (1845)).  Submerged lands therefore had "a unique status in the law"; Idaho's ownership of them was an "essential attribute of sovereignty." *Id.* (quotation omitted).

The tribe's suit violated the Eleventh Amendment because the requested relief would have taken the submerged lands outside "the regulatory jurisdiction of the State" by "bar[ring] the State's principal officers from exercising their governmental powers and authority over the disputed lands." *Id.* at 282.  Namely, the requested relief would have "divest[ed] the State of its sovereign control over submerged lands." *Id.* at 283.

The Court confirmed this conclusion by examining Idaho law, which provided that submerged land was held "in [the state's] sovereign capacity for the purpose of ensuring that it is used for the public benefit." *Id.* at 287.  "The dignity and status of [Idaho's] statehood allow Idaho to rely on its Eleventh Amendment immunity and to insist upon responding to these claims in its own courts." *Id.* at 287–88.

### 2.    This action falls squarely within the *Coeur d'Alene* limitation.

Enbridge's *Ex parte Young* claims lie squarely within the limitation discussed in *Coeur d'Alene*.  When Michigan became a state, it did so on an equal footing with the original thirteen states.  It "became [itself] sovereign" and acquired the submerged lands in the Straits of Mackinac.  *See Coeur d'Alene*, 521 U.S. at 283 (quoting *Martin*, 16 Pet. at 410).

The relief Enbridge seeks would wrest certain submerged lands in the Straits of Mackinac, which Michigan holds in perpetual trust for the public, from "the regulatory jurisdiction of the State" by "bar[ring] the State's principal officers from exercising their governmental powers and authority over the disputed lands," thus "divest[ing] the State of its sovereign control over submerged lands."  *Id.* at 282–83.  Enbridge requests "[a]n injunction prohibiting Defendants from taking *any steps to impede or prevent* the interstate and international operation of Line 5," (*see* ECF No. 1, PageID.19, emphasis added), and seeks a wide range of declarations that amount to the same.  (*See id.* PageID.18–19.)  These requests would leave the Michigan Officials powerless over Enbridge's use of the bottomlands traversed by the Straits Pipelines.

In *Coeur d'Alene*, the Supreme Court relied on Idaho law to confirm that the relief requested by the tribe would intrude on the state's special sovereignty interests.  521 U.S. at 286–87.  The same is true in Michigan: "under longstanding principles of Michigan's common law, *the state, as sovereign*, has an obligation to protect and preserve the waters of the Great Lakes and the lands beneath them for

12

the public." *Glass*, 703 N.W.2d. at 64 (emphasis added).[7]  Enbridge seeks intrusive relief that would interfere with Michigan's special sovereignty interests in its bottomlands, and the action must be dismissed to respect "[t]he dignity and status of [Michigan's] statehood." *Coeur d'Alene*, 521 U.S. at 287.

It is irrelevant that Enbridge does not style its claims as quiet title claims as the *Coeur d'Alene* plaintiffs did.  *Coeur d'Alene* never required that a lawsuit must be "the functional equivalent of a quiet title action" over sovereign bottomlands to fall outside *Ex parte Young*.  *See id.* at 282.  Rather, the Court's analysis rested on whether the requested relief would intrude on the state's special sovereignty interests.  *See id.* at 281–88. Sixth Circuit precedent confirms this interpretation. In *MacDonald v. Village of Northport*, 164 F.3d 964, 966–67 (6th Cir. 1999), a plaintiff brought *Ex parte Young* claims seeking relief that would have vacated a public right-of-way providing access to a public beach on Lake Michigan.  *See* 164 F.3d at 966–67.  The Sixth Circuit reasoned that the *Ex parte Young* claims were barred by *Coeur d'Alene*, even though ownership of submerged lands was not at issue.  "Because the state of Michigan has a great interest in maintaining public

---

[7] The similarity between Idaho and Michigan law is natural: both states' public trust doctrines derive from the "universally accepted rules of such [public] trusteeship as announced by the Supreme Court in *Illinois Central Railroad Co. v. State of Illinois*, 146 U.S. 387 (1892)."  *Obrecht v. Nat'l Gypsum Corp.*, 105 N.W2d 143, 149 (Mich. 1960) (citation cleaned up) (emphasis added); *see Kootenai Envtl. All., Inc. v. Panhandle Yacht Club, Inc.*, 671 P.2d 1085, 1088 (Idaho 1983) (explaining how Idaho's public trust doctrine also derives from *Illinois Central Railroad Co.*).

access to the Great Lakes," the court reasoned, "the [plaintiffs'] requested relief implicated 'special sovereignty interests.'" *Id.* at 972 (quoting *Coeur d'Alene*, 521 U.S. at 281).[8]  The same is true here.

This interpretation is consistent with other Supreme Court precedent. Enbridge cannot sidestep the *Coeur d'Alene* limitation, because "the general criterion for determining when a suit is in fact against the sovereign is the *effect* of the relief sought." *Pennhurst*, 465 U.S. at 107.  To hold otherwise would render *Coeur d'Alene* "an empty formalism." *See Stewart*, 563 U.S. at 256 (quoting *Coeur d'Alene*, 521 U.S. at 270) (warning against this risk).

Enbridge's opposition will likely rely on *Arnett v. Myers*, 281 F.3d 552 (6th Cir. 2002).  (*See* Enbridge's response to Defendant's request for a pre-motion conference, ECF No. 41, PageID.264–265.)  That precedent is poles apart from this case.  As Enbridge recognizes, *Arnett* did not address bottomlands at all; it instead addressed three individuals' "*riparian* fishing rights" to place and maintain duck blinds "over" a Tennessee lake.  *See* 281 F.3d at 567–68 (emphasis added).[9]

_____

[8] The Sixth Circuit in *MacDonald* observed that the plaintiffs sought to quiet title for certain unsubmerged land.  164 F.3d at 972.  Enbridge will likely misread *MacDonald* to argue that this observation was essential to the outcome there.  But the better reading of *MacDonald* is that "the state of Michigan['s] . . . great interest in maintaining public access to the Great Lakes" was enough for the suit to "implicate[] 'special sovereignty interests.'"  164 F.3d at 972 (quoting *Coeur d'Alene*, 521 U.S. at 281).  This better reading is further supported by the fact that neither the Supreme Court nor the Sixth Circuit has held that a quiet title action relating to a state's unsubmerged land implicates its special sovereignty interests.

[9] Even if the duck blinds in *Arnett* were moored or attached to submerged bottomlands, they could not have implicated Tennessee's special sovereignty

14

Enbridge's arguments about the Submerged Lands Act are equally irrelevant.  (*See* ECF No. 41, PageID.264.)  Enbridge's arguments implicate merits issues that must follow the threshold question of whether *Coeur d'Alene* bars the requested relief entirely.

*Lighthouse Res, Inc. v. Inslee*, No. 3:18-CV-05005-RJB, 2018 U.S. Dist. LEXIS 181862 [*9–20] (W. D. Wash. Oct. 23, 2018), persuasively illustrates how, under *Coeur d'Alene,* the Eleventh Amendment bars *Ex parte Young* claims against state officials that functionally interfere with a state's sovereign authority to control the use of its submerged lands.  There, the plaintiffs challenged a Washington state official's denial of requests for sub-leases of state-owned aquatic lands, asserting that the denial violated the Commerce Clause and was preempted by federal statutes.  *Id* at *2–3.  The plaintiffs sought declaratory and injunctive relief that would overturn the state's decision and enjoin its application to the plaintiffs.  *Id.* at *12–16.  The court granted summary judgment in favor of the state official based upon the Eleventh Amendment and *Coeur d'Alene* because the relief sought "would functionally prevent Washington State's officers from exercising their authority

--------

interests.  The lake did not exist when Tennessee became a state.  *Arnett*, 281 F.3d at 557 n.1.  Most of the then-unsubmerged lands were privately owned under the "Doherty grant."  *Id.*  In 1810, an earthquake caused the lake to form over parts of Doherty lands.  *Id.*  Before the Sixth Circuit decided *Arnett*, the Tennessee Supreme Court had decided that the state's special sovereignty interests in lake bottomlands did not extend to areas that were former Doherty lands.  *See Hamilton v. Myers*, 281 F.3d 520, 527–28 (6th Cir. 2002) (companion case to *Arnett* that describes this history in detail).  And the duck blinds in *Arnett* were placed over former Doherty lands.  *Arnett*, 281 F.3d at 567-68.

over Washington's sovereign lands." *Id.* at *16–18.  The same principles apply to Enbridge's claims here.

For these reasons, Enbridge's *Ex parte Young* claims are barred by the *Coeur d'Alene* limitation that prohibits the company from seeking relief that would interfere with Michigan's special sovereignty interests in submerged bottomlands.

This warrants dismissal of all of Enbridge's claims.

### C.    This action must be dismissed because Enbridge seeks relief that would compel Michigan's specific performance of a contract.

Enbridge's claims overstretch *Ex parte Young* and must be dismissed for another reason:  Enbridge impermissibly seeks "an order for specific performance of a State's contract." *Stewart*, 563 U.S. at 257.  This doctrine stems from nineteenth-century Supreme Court decisions. *See Edelman v. Jordan*, 415 U.S. 651, 666–67 (1974) (emphasizing *In re Ayers*, 123 U.S. 443 (1887) and *Hagood v. Southern*, 117 U.S. 52 (1886)).  The Eleventh Amendment bars suit under *Ex parte Young* if "the things required by the decree[] to be done and performed by [an individual defendant] are the very things which, when done and performed, constitute a performance of the alleged contract by the state." *Hagood*, 117 U.S. at 67.  In such circumstances, "[t]he state is not only the real party to the controversy, but the real party against which relief is sought by the suit, and the suit is therefore substantially within the prohibition of the eleventh amendment to the constitution of the United States." *Id.*  Framed differently, the ultimate question is whether "the

suit is . . . in substance, though not in form, a suit against the state." *In re Ayers*, 123 U.S. at 503.

Enbridge's claims fall squarely within this well-established prohibition. Absent the 1953 Easement, Enbridge's predecessor would never have been able to build the Straits Pipelines, and Enbridge would not be allowed to operate them. Through this action, Enbridge seeks an order compelling the Michigan Officials to accede to the continued presence and operation of the Straits Pipelines on the state's bottomlands. That "[is] the very thing[], which, when done and performed, constitute[s] a performance of the alleged contract by [Michigan]." *See Hagood*, 117 U.S. at 67. Thus, Michigan "is not only the real party to the controversy, but the real party against which relief is sought by the suit." *Id.*

The recent decision in *Waterfront Commission of New York Harbor v. Murphy*, 961 F.3d 234 (3d Cir. 2020), *cert. denied*, 142 S. Ct. 561 (2021), is instructive. There, the New Jersey legislature passed a statute allowing its governor to withdraw from an interstate compact with New York that empowered the Waterfront Commission of New York Harbor, a joint instrumentality of the two states, to oversee harbor business operations. *See id.* at 236–37. The Commission sued the New Jersey governor under *Ex parte Young* to enjoin any withdrawal. *Id.* at 237. The Third Circuit held that the requested injunction was "tantamount to specific performance [and] would operate against the State itself, demonstrating that New Jersey is the real, substantial party in interest." *Id.* at 241. *Ex parte Young* could not be used to "compel New Jersey to continue to abide by the terms of

an agreement it has decided to renounce." *Id.* Likewise here, Michigan "renounced" its agreement with Enbridge respecting the 1953 Easement. (ECF No. 1-1, PageID.22 ("[T]he *State of Michigan* is formally notifying Enbridge that *the State* is revoking and terminating the 1953 Easement", emphases added).) *Ex parte Young* may not be used to "compel [Michigan] to continue to abide by the terms of an agreement it has decided to renounce." *Waterfront Comm'n of N.Y. Harbor*, 961 F.3d at 241.

Even worse, Enbridge's complaint reaches beyond merely requiring Michigan to perform under the terms of a contract it has renounced. Enbridge seeks a judicial order that would nullify or rewrite contractual terms. For example, Enbridge seeks an order that would prevent Michigan from invoking the "'reasonably prudent' due care standard or [other] specific provisions" in the contract to revoke or terminate the easement. (Compl., ECF No. 1, PageID.19.) Enbridge essentially seeks an order that would rewrite any portion of the contract that it does not like. That order would render the 1953 Easement irrevocable, notwithstanding that the agreement itself contemplates that it can be terminated. (ECF No. 1-1, PageID.33.) No precedent supports such an extreme application of *Ex parte Young*.

The inquiry here is straightforward: this Court should focus on "substance" over "form," *see Ayers*, 123 U.S. at 503, and ask what is "the *effect* of the relief sought," *see Pennhurst*, 465 U.S. at 107. This Court should look past any efforts to obscure that Enbridge seeks Michigan's specific performance under the 1953 Easement. *E.g.*, *Tamiami Partners v. Miccosukee Tribe of Indians of Fla.*, 177 F.3d

1221, 1225 (11th Cir. 1999) (seeing through a "thinly-disguised attempt . . . to obtain specific performance"); *cf. McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1052 (7th Cir. 2013) (in the context of another limitation on *Ex parte Young* pertaining to the payment of funds from a state's treasury, rejecting an attempt to "cast[] th[e] relief" in different "terms" to circumvent that limitation).

Enbridge's claims are barred by the doctrine prohibiting plaintiffs from using *Ex parte Young* to compel a state's specific performance under a contract.

## CONCLUSION

Enbridge's claims are barred by the Eleventh Amendment and should be dismissed under Rules 12(b)(1) and 12(b)(6).  Enbridge cannot meet its burden of establishing subject-matter jurisdiction, and its allegations are insufficient to state *Ex parte Young* claims.  This Court should dismiss Enbridge's claims and protect Michigan from "the insult . . . of being haled into court without its consent." *Stewart*, 563 U.S. at 258.

> Respectfully submitted,
>
> Dana Nessel
> Attorney General
>
> /s/ *Robert P. Reichel*
> Robert P. Reichel (P31878)
> Daniel P. Bock (P71246)
> Assistant Attorneys General
> Attorneys for Defendants
> Michigan Department of Attorney General
> Environment, Natural Resources, and Agriculture Division
> P.O. Box 30755

                                    Lansing, MI 48909
                                    (517) 335-7664
                                    ReichelB@michigan.gov
Dated:  January 18, 2022            BockD@michigan.gov

LF:  Enbridge Straits (Dec & Inj Relief)(vDNR)/AG#2020-0306464-A/Defendants' Brief in Support of Motion to Dismiss 2022-01-18