UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ENBRIDGE ENERGY, LIMITED
PARTNERSHIP, et al.,

    Plaintiffs,

v.

GRETCHEN WHITMER, et al.,

    Defendants.
_____/

Case No. 1:20-cv-1141

HON. ROBERT J. JONKER

## OPINION AND ORDER

The Governor of Michigan and the Director of the Michigan Department of Natural Resources issued an order to Enbridge directing shut down of its Line 5 pipeline. Enbridge filed this action seeking declaratory and injunctive relief against the shutdown order as a violation of federal statutory and constitutional law. Defendants ask this Court to dismiss the complaint on sovereign immunity grounds. (ECF No. 62.)  For the reasons stated below, Defendants' Motion to Dismiss is denied.

### I.    BACKGROUND

**A. Factual Background**

Line 5 is a pipeline owned and operated by Enbridge. The pipeline has been transporting crude oil and natural gas liquids through Wisconsin and Michigan to Canada for over 65 years. A small segment of the pipeline, referred to as the Straits Pipeline, crosses the Straits of Mackinac under an Easement granted in 1953.

On November 13, 2020, Defendants issued a Notice of Revocation and Termination of Easement to Enbridge that directed Enbridge to cease operating the Straits Pipeline and decommission it within 180 days. (ECF No. 1-1.) The Notice purported to revoke the 1953 Easement because (1) it was allegedly not a valid conveyance; (2) the continued use of the Straits Pipeline allegedly violates the public trust doctrine; and (3) Enbridge allegedly breached the Easement's terms. Enbridge filed this action eleven days after the Notice and has continued to operate the pipeline during the pendency of this case.[1]

**B. Procedural Background**

On November 24, 2020, Enbridge filed this three-count complaint seeking declaratory and injunctive relief against Defendants in their official capacities based on three federal law theories. (ECF No. 1.) First, Enbridge alleges that Defendants' shutdown would violate the Supremacy Clause because the federal Pipeline Safety Act expressly preempts state regulation of pipeline safety. Second, Enbridge alleges that Defendants' shutdown would violate the Interstate Commerce Clause as an unreasonable and discriminatory burden on interstate commerce. Third, Enbridge alleges that Defendants' shutdown would violate the Foreign Commerce Clause and Foreign Affairs Doctrine because it intrudes on the federal government's exclusive right to conduct foreign relations and interferes with treaty obligations of the United States. The Enbridge Request for Relief does not explicitly seek enforcement of the 1953 Easement, but it does seek relief under these federal law theories that would prevent Defendants from revoking the 1953 Easement based

---

[1] The Court refers to this case as *Enbridge I*. There are two other related cases. One is *Nessel, Attorney General of the State of Michigan v. Enbridge Energy Limited Partnership, et al.*, Case No. 1:21-cv-1057 (*Enbridge III*). Defendants removed that action from the state court, and the Sixth Circuit Court of Appeals recently issued its Opinion directing remand of the matter to the state court. *Enbridge III*, ECF No. 39. The mandate has not yet issued. The second is *State of Michigan, et al., v. Enbridge Energy Limited Partnership, et al.,* Case No. 1:20-cv-1142 (*Enbridge II*). *Enbridge II* also began in state court, but after the Defendants removed the case here, Plaintiffs voluntarily dismissed the action. *Enbridge II*, ECF No. 83. All three cases were recently re-assigned to the undersigned. *Enbridge I*, ECF No. 89.

on any theory rooted in perceived state law safety concerns, the state's public trust doctrine or any other similar state law theory.

Defendants filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) based on sovereign immunity. (ECF No. 62.) At the same time, Enbridge filed a Motion for Summary Judgment on Counts I and III. (ECF No. 65.) Both motions are fully briefed[2] and ready for decision. This Opinion will address only the Motion to Dismiss. The Court will set a hearing on Enbridge's Motion for Summary Judgment on Counts I and III.

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) allows for dismissal of an action for lack of subject-matter jurisdiction. A Rule 12(b)(1) motion asserting a facial challenge to subject matter jurisdiction asks the Court to find that even if the allegations in the complaint are true, the pleadings are not sufficient to establish subject matter jurisdiction. *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 324 (6th Cir. 1990). The Sixth Circuit has found that a Rule 12(b)(1) motion is an appropriate way for a state to raise sovereign immunity. *See Nair v. Oakland County Cmty. Mental Health Auth.,* 443 F.3d 469, 476 (6th Cir. 2006). Unlike a traditional motion to dismiss for lack of subject-matter jurisdiction, "the entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity." *Id.* at 474.

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of an action for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

---

[2] The briefing includes several amicus briefs and supplemental briefs.

3

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In determining whether a claim has facial plausibility a court must construe the complaint in the light most favorable to the plaintiff, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### III. ANALYSIS

"Sovereign immunity protects states, as well as state officials sued in their official capacity for money damages, from suit in federal court." *Boler v. Earley*, 865 F.3d 391, 409-10 (6th Cir. 2017). "There are three exceptions to sovereign immunity: (1) when the state has waived immunity by consenting to the suit; (2) when Congress has expressly abrogated the states' sovereign immunity, and (3) when the doctrine set forth in *Ex parte Young*, 209 U.S. 123 (1908) applies." *Id.* at 410. Michigan has not waived immunity and Congress has not abrogated immunity in this case. Thus, *Ex parte Young* is the only relevant exception.

"Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law." *S & M Brands, Inc. v. Cooper,* 527 F.3d 500, 507 (6th Cir. 2008). "It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96 n.14 (1983) (citing *Ex parte Young*, 209 U.S. at 160-62). The doctrine is premised on the concept that "when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Virginia Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254-55 (2011). "In determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether the complaint alleges an ongoing

4

violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, 298-99 (1997)). "The inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." *Id.* at 646.

Here, Enbridge seeks prospective injunctive and declaratory relief to stop state officials from shutting down the Line 5 pipeline in violation of federal constitutional and statutory law. This is a straightforward *Ex parte Young* case. Enbridge "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* at 645.

Defendants argue that *Ex parte Young* does not apply for two reasons. First, Defendants contend this action falls squarely within the *Coeur d'Alene* limitation because Enbridge seeks relief that would interfere with Michigan's special sovereignty interests in its submerged bottomlands. Second, Defendants argue that Enbridge seeks relief that would operate against Michigan by effectively compelling Michigan's specific performance with a contract. Both arguments fail.

    A. *Coeur d'Alene* **Limitation**

In *Coeur d'Alene*, the Supreme Court held that a Native American Tribe's suit against Idaho was barred by the Eleventh Amendment because it amounted to the "functional equivalent of a quiet title action which implicates special sovereignty interests." 521 U.S. at 281. The Tribe claimed, "ownership in the submerged lands and bed of Lake Coeur d'Alene and of the various navigable rivers and streams that form part of its water system" and "sought a declaratory judgment to establish its entitlement to the exclusive use and occupancy and the right to quiet enjoyment of the submerged lands as well as a declaration of the invalidity of all Idaho statutes, ordinances, regulations, customs, or usages which purport to regulate, authorize, use, or affect in any way the submerged lands." *Id.* at 264-65. The Tribe also sought "a preliminary and permanent injunction

5

prohibiting defendants from regulating, permitting, or taking any action in violation of the Tribe's rights of exclusive use and occupancy, quiet enjoyment, and other ownership interest in the submerged lands together with an award for costs and attorney's fees and such other relief as the court deemed appropriate." *Id.* at 265.  In holding that the Tribe's suit was barred by sovereign immunity, the Court found the requested relief was "far-reaching and invasive," and the "functional equivalent of quiet title in that substantially all benefits of ownership and control would shift from the State to the Tribe." *Id.* at 282.  "[U]nder these particular and special circumstances," the Court held that the *Ex parte Young* exception did not apply. *Id.* at 287.

*Coeur d'Alene* is a narrow decision and this case does not involve allegations remotely close to it.  The Sixth Circuit has reiterated that *Coeur d'Alene* bars suits only when the action is "a functional equivalent of a quiet title action implicating special sovereignty interests." *Arnett v. Myers,* 281 F.3d 552, 567 (6th Cir. 2002); *see also Stevens v. Michigan State Court Admin. Off.*, No. 21-1727, 2022 WL 3500193, at *5 (6th Cir. Aug. 18, 2022) ("We will not break from this tradition of reading *Coeur d'Alene* narrowly.").  Enbridge's complaint is not the functional equivalent of a quiet title action or even close to it.  It asserts no title rights of any kind, whether to bottomlands in the Straits or to any other property in which Michigan claims title.  It does not seek exclusive use of the bottomlands of the Straits or any other property Michigan claims to own. Nor does it seek any kind of sweeping relief invalidating all Michigan "statutes, ordinances, regulations, customs, or usages which purport to regulate, authorize, use, or affect in any way the submerged lands." *Coeur d'Alene*, 521 U.S. at 265.  To the contrary, rather than seek the sweeping relief of a claimed owner of the bottomlands, Enbridge requests relief that would preclude state officials from shutting down ongoing operations of a pipeline that has been functioning under

6

easement for the past 65 years. And the bases for that requested declaratory and injunctive relief are rooted in alleged violations of federal law, a paradigm *Ex parte Young* scenario.

Similarly, Defendants' reliance on *MacDonald v. Village of Northport*, 164 F.3d 964 (6th Cir. 1999), is misplaced. *MacDonald* involved a property owner's claim that a platted street along their property in Northern Michigan provided public right of way to Grand Traverse Bay, and that the public used the platted street in a way that interfered with the enjoyment of their private property. *Id.* at 966-67. The plaintiffs sought entry of an order vacating the publicly platted street and amending the plat, all of which would have impaired the ability of the public to access the navigable waters of Grand Traverse Bay. *Id.* This risk brought state officers into the case as defendants. The holding on which all three *MacDonald* judges agreed was that the district court properly applied *Buford* abstention. *Id.* at 970. That holding was sufficient to resolve the case, but two of the three judges also concluded, without agreement by the third,[3] that *Coeur d'Alene* meant the claim was barred by the Eleventh Amendment in any event. The rationale of the plurality was that Michigan's "great interest in maintaining public access to the Great Lakes" was at issue in the case and implicated "special sovereignty interests" akin to those at issue in *Coeur d'Alene*. *Id.* at 972. But there is no similar interest at issue here. Enbridge does not claim sovereign ownership or any entitlement to the exclusive use and occupancy of the submerged lands. It is not attempting to block anyone else's access to the bottomlands, or to any other part of the Great Lakes system. It is simply seeking relief that would prevent state officials from allegedly violating provisions of federal law by stopping the continued operation of a pipeline that has been operating for many years over a bottomlands easement.

---

[3] Both the plurality and concurring opinions recognized that neither the district court nor the parties had actually addressed the issue of *Ex parte Young* and *Coeur d'Alene*. *Id.* at 970, 973. Judge Ryan concluded that this meant the Eleventh Amendment issue needed "more thorough vetting than it has been given on this appeal" and that the case should be affirmed on abstention grounds alone. *Id.* at 973.

7

Because this is not the functional equivalent of a quiet title action, the *Coeur d'Alene* limitation does not apply.

### B. Specific Performance of a State Contract

"As in most areas of the law, the difference between the type of relief barred by the Eleventh Amendment and that permitted under *Ex parte Young* will not in many instances be that between day and night." *Edelman v. Jordan*, 415 U.S. 651, 667 (1974). This is a fitting prelude to the analysis of Defendants' argument that the Eleventh Amendment bars this case because the relief requested is essentially seeking specific performance of a State contract. It is true that "*Ex parte Young* cannot be used to obtain an order for specific performance of a State's contract." *Stewart*, 563 U.S. at 257 (cleaned up); *see also Edelman*, 415 U.S. at 666-67. But it is also true that *Ex parte Young* does permit suits seeking injunctive relief against a state officer's enforcement of a state law that allegedly violates federal law even if the prospective relief would vindicate contractual rights. *See Georgia Railroad & Banking Co. v. Redwine,* 342 U.S. 299, 300-301 (1952). Indeed, the Supreme Court has rejected Eleventh Amendment immunity even in a case involving a dispute between two different agencies of the same state when the disagreement involved conditions imposed by the federal government on federal funding accepted by the state. *Stewart*, *supra*. The critical question is whether "'the state is the real, substantial party in interest.'" *Stewart,* 563 U.S. at 255 (quoting *Pennhurst State Sch. and Hospital v. Halderman*, 465 U.S. 89, 105 (1984)).

*Redwine* is on point and demonstrates that the state is not the real party in interest here, and that that *Ex parte Young* properly applies. In *Redwine*, a railroad sued to enjoin the enforcement of a new state law that purported to remove the railroads contractually based exemption from state taxation. 342 U.S. at 300-01. The district court described the case "as one to enforce an alleged

8

contract with the State of Georgia" and dismissed it for lack of jurisdiction. *Id.* at 304. The Supreme Court disagreed and held that the suit fell within the *Ex parte Young* exception even though the threatened taxation would "impair the obligation of contract." *Id.* at 304-05. The Court reasoned that the "complaint is not framed as a suit for specific performance," rather it seeks to "enjoin [a state official] from collecting taxes in violation of [the plaintiff's] rights under the Federal Constitution." *Id.* at 304. The Court also noted that the railroad "merely seeks the cessation of [the state official's] allegedly unconstitutional conduct and does not request affirmative action by the State." *Id.* at 304 n.15. In sum: "This Court has long held that a suit to restrain unconstitutional action threatened by an individual who is a state officer is not a suit against the State." *Id.* at 304.

Like the relief sought in *Redwine*, the relief sought here does not request Michigan's specific performance of the 1953 Easement. In fact, it does not request any affirmative action of any kind by the State of Michigan. Enbridge seeks only an order prohibiting Defendants' actions of shutting down the Line 5 pipeline in alleged violation of federal statutory and constitutional law. This relief, if granted, certainly protects continued operation of the 1953 Easement against termination based on violations of federal law. But that does not take the case outside the ambit of *Ex parte Young*. To the contrary, that fits the paradigm case *for Ex parte Young*: prospective relief against a state officer's alleged violation of federal law.

Defendants invoke *Waterfront Comm'n of New York Harbor v. Governor of New Jersey*, 961 F.3d 234 (3d Cir. 2020). The Waterfront Commission of New York Harbor was a creature of an interstate compact between the states of New York and New Jersey. *Id.* at 236. As container shipping with large liners developed, the deeper water ports of New Jersey became more popular than those of New York. *Id.* New Jersey decided to renounce the Compact and start operating its

side of the water on its own, thereby generating more revenue for itself at the expense of the Commission. *Id.* New Jersey implemented the decision by repealing the state legislation authorizing the Commission. *Id.* at 237. The Commission sued the Governor of New Jersey seeking a declaration that the repealer legislation violated not only the compact but also the Supremacy Clause of the Constitution because the Constitution requires congressional approval of interstate compacts. *Id.* The Third Circuit held that the *Ex parte Young* exception did not apply because the relief sought "would compel New Jersey to continue to abide by the terms of an agreement it has decided to renounce. Such relief tantamount to specific performance would operate against the State itself, demonstrating that New Jersey is the real, substantial party in interest." *Id.* at 241. The court also noted that the relief sought would "have an adverse impact on the State of New Jersey's treasury and compel the State to perform" *id.* at 241, and that the case was a "fact-specific holding." *Id.* at 241 n.11.

*Waterfront Comm'n* is not binding on this Court, and does not consider *Redwine*. It is also distinguishable. The relief sought by Enbridge is not tantamount to specific performance of a contract. Nor does it pose any threat to the Michigan treasury. Moreover, in *Waterfront Comm'n*, the only real relief requested was a declaration that New Jersey was in breach of the compact by repealing the authorizing legislation. The claimed basis for *Ex parte Young* treatment was not any alleged ongoing violation of federal law by a state officer but rather a claim that the Constitution's Interstate Compact Clause somehow transformed the particular terms of the compact to the status of supreme federal law. But here Enbridge is not seeking any such declaration regarding the terms of the 1953 Easement, or any other relief for an alleged breach of contract. Rather, it is simply seeking a prospective injunction that prevents state officers from allegedly breaching federal law

by stopping the ongoing operation of a pipeline. That brings this case squarely within *Ex parte Young*.

## IV.    CONCLUSION

In sum, Enbridge seeks an order prohibiting state officials from shutting down the Line 5 pipeline in violation of federal statutory and constitutional law. Enbridge is neither asserting ownership over state lands nor seeking to compel performance of a state contract. This case falls squarely under the *Ex parte Young* exception to sovereign immunity. Accordingly, Defendants' Motion to Dismiss (ECF No. 62) is denied.


Dated:  July 5, 2024                                                     /s/ Robert J. Jonker
                                                                         ROBERT J. JONKER
                                                                         United States District Judge

11