**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Kelly L. Stephens<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed:  April 23, 2025

Mr. Daniel Paul Bock
Office of the Attorney General
of Michigan
P.O. Box 30755
Lansing, MI 48909

Mr. Andrew Buchsbaum
Buchsbaum & Associates
1715 David Court
Ann Arbor, MI 48105

Mr. Phillip J. DeRosier
Dickinson Wright
500 Woodward Avenue
Suite 4000
Detroit, MI 48226-3425

Mr. Jacob James Demree
Sherman Dunn
900 Seventh Street, N.W.
Suite 1000
Washington, DC 20001

Mr. David R. Jury
United Steelworkers of America
60 Boulevard of the Allies
Suite 807
Pittsburgh, PA 15222

Mr. Oliver Larson
Office of the Attorney General of Minnesota
445 Minnesota Street, Suite 900
St. Paul, MN 55101

Ms. Alice Elizabeth Loughran
Steptoe
1330 Connecticut Avenue, N.W.
Washington, DC 20036

Mr. Jonathan D. Newman
Sherman Dunn
900 Seventh Street, N.W.
Suite 1000
Washington, DC 20001

Mr. James Mark Olson
Olson & Howard
520 S. Union Street
Traverse City, MI 49684

Mr. Ryan Petty
Office of the Attorney General
of Minnesota
445 Minnesota Street
Suite 900
St. Paul, MN 55101

Mr. Mark Christopher Savignac
Steptoe
1330 Connecticut Avenue, N.W.
Washington, DC 20036

Ms. Kaitlyn D. Shannon
Beveridge & Diamond
1900 N. Street, N.W.
Suite 100
Washington, DC 20036

Mr. Keith David Underkoffler
Office of the Attorney General
of Michigan
P.O. Box 30755
Lansing, MI 48909

      Re: Case No. 24-1608, *Enbridge Energy, LP, et al v. Gretchen Whitmer, et al*
         Originating Case No. : 1:20-cv-01141

Dear Counsel,

 The court today announced its decision in the above-styled case.

    Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                                                Yours very truly,

                                                Kelly L. Stephens, Clerk

                                                Cathryn Lovely
                                                Deputy Clerk

cc:  Ms. Ann E. Filkins

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0101p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

ENBRIDGE ENERGY, LP; ENBRIDGE ENERGY COMPANY, INC.; ENBRIDGE ENERGY PARTNERS, L.P.,
        *Plaintiffs-Appellees*,

    *v.*

GRETCHEN WHITMER, the Governor of the State of Michigan in her official capacity; SCOTT BOWEN, Director of the Michigan Department of Natural Resources in his official capacity,
        *Defendants-Appellants*.

No. 24-1608

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:20-cv-01141—Robert J. Jonker, District Judge.

Argued: March 18, 2025

Decided and Filed: April 23, 2025

Before: MOORE, KETHLEDGE, and BLOOMEKATZ, Circuit Judges.
_____

**COUNSEL**

**ARGUED:** Daniel P. Bock, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellants. Mark C. Savignac, STEPTOE LLP, Washington, D.C., for Appellees. **ON BRIEF:** Daniel P. Bock, Keith D. Underkoffler, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellants. Mark C. Savignac, Alice E. Loughran, STEPTOE LLP, Washington, D.C., Phillip J. DeRosier, DICKINSON WRIGHT PLLC, Detroit, Michigan, for Appellees. James M. Olson, FOR LOVE OF WATER, Traverse City, Michigan, Andy Buchsbaum, GREAT LAKES BUSINESS NETWORK, Ann Arbor, Michigan, Oliver J. Larson, RYAN V. Petty, OFFICE OF THE MINNESOTA ATTORNEY GENERAL, St. Paul, Minnesota, David R. Jury, UNITED STEELWORKERS, Pittsburgh, Pennsylvania, Jonathan D. Newman, Jacob J. Demree, SHERMAN DUNN, P.C., Washington,

D.C., Kaitlyn D. Shannon, BEVERIDGE & DIAMOND, P.C., Washington, D.C., for Amici Curiae.

## OPINION

BLOOMEKATZ, Circuit Judge. Enbridge Energy owns and operates a pipeline that runs from Wisconsin, through Michigan, and into Canada. Between Michigan's Upper and Lower Peninsulas, the pipeline crosses through the bottomlands of the Straits of Mackinac, land that belongs to the State of Michigan. Enbridge's pipeline crosses the Straits pursuant to a 1953 easement between Enbridge and the State.

In recent years, the pipeline has generated multiple lawsuits and media attention. This appeal stems from a case that began in 2020, when Michigan Governor Gretchen Whitmer informed Enbridge that the State was revoking the easement. Governor Whitmer alleged that Enbridge had violated the easement by allowing its pipeline to create an unreasonable risk of a catastrophic oil spill. In response, Enbridge filed suit in federal court against Governor Whitmer and Daniel Eichinger, the Director of the Michigan Department of Natural Resources, alleging that the Michigan officials' actions violated federal law and requesting declaratory and injunctive relief prohibiting the defendants from interfering with the operation of the pipeline. This appeal concerns a narrow, threshold issue in this case: the defendants' argument that Enbridge's claims are barred by Eleventh Amendment sovereign immunity. Below, the district court rejected that argument. We do as well. We hold that Enbridge's lawsuit falls within the *Ex parte Young* exception to Eleventh Amendment sovereign immunity and accordingly affirm the district court.

## BACKGROUND

I.      The Pipeline and the 1953 Easement

Enbridge owns and operates the Line 5 Pipeline, which is "part of a pipeline network that transports petroleum products to refineries in the Midwest" and parts of Canada.[1] *Nessel ex rel.*

---

[1] The plaintiffs in this case are several related companies—Enbridge Energy, LP; Enbridge Energy Company, Inc.; and Enbridge Energy Partners, LP. We refer to the plaintiffs collectively as "Enbridge."

No. 24-1608   *Enbridge Energy, LP, et al. v. Whitmer, et al.*   Page 3

*Michigan v. Enbridge Energy, LP*, 104 F.4th 958, 961 (6th Cir. 2024).  The pipeline runs through State-owned land in the bottomlands of the Straits of Mackinac between Michigan's Upper and Lower Peninsulas.  *Id.*

The pipeline crosses the Straits in accordance with a 1953 easement between Enbridge and the State of Michigan.[2]  With that easement, the State agreed to permit Enbridge "to construct, lay, maintain, use and operate" the pipeline over a portion of the bottomlands of the Straits.  1953 Easement, R. 1-1, PageID 44.  The easement states that Enbridge's permission is subject to certain express "terms and conditions," including that Enbridge exercise "due care" for the "safety and welfare of all persons and of all public and private property."  *Id.* at PageID 45–46.  The easement also requires that the company comply with certain technical "minimum specifications, conditions and requirements" for the pipeline, including limitations on the pipeline's construction materials, depth, and negative buoyancy.  *Id.* at PageID 46–48.  Moreover, the terms allow the State to terminate the easement if, after the State notifies Enbridge in writing regarding alleged breaches of the easement, Enbridge fails to correct them.  *Id.* at PageID 49.

## II.   Litigation Regarding the State's Attempts to Terminate the Easement

Since 2019, Michigan officials have sought to terminate the easement, contending both that the easement was void from its inception and that Enbridge breached the easement.  Those efforts have generated litigation in both state and federal court.  We review these actions briefly to situate this matter.

### A.  Concurrent Litigation

In June 2019, Michigan Attorney General Dana Nessel filed suit against Enbridge in Michigan state court.  General Nessel alleged that a 2017 report commissioned by the State had concluded that Enbridge's pipeline had a one-in-sixty risk of rupturing in the next thirty-five years.  That report explained that the biggest threat facing the pipeline was the risk that a ship

---

[2]The State agreed to the easement with Enbridge's predecessor, the Lakehead Pipeline Company.  Enbridge has all relevant benefits of the easement that Lakehead originally had.  For ease, we omit references to Lakehead and treat the original easement as between the State and Enbridge.

traveling through the Straits of Mackinac would inadvertently deploy its anchor and strike the pipeline, causing it to rupture. General Nessel's complaint noted that, in April 2018, a ship's anchor had in fact struck Enbridge's pipeline in the Straits, but the pipeline had not ruptured. Based on this state of affairs, General Nessel sought to permanently enjoin the operation of the pipeline, alleging that the pipeline presented an unacceptable risk of a catastrophic oil spill and that Enbridge's operation of the pipeline violated several state laws. *See Nessel*, 104 F.4th at 961–62.

In November 2020, with the Attorney General's lawsuit pending, Michigan Governor Gretchen Whitmer issued Enbridge a formal notice of revocation and termination of the easement and filed her own complaint in Michigan state court, in a separate lawsuit, seeking to enforce the notice and enjoin Enbridge's operation of the pipeline. *See id.* Governor Whitmer's notice of revocation and termination alleged that the easement had been void from its inception and that, even if the easement were not void, Enbridge had violated it by failing to exercise due care with respect to the operation of the pipeline and by failing to comply with the easement's technical requirements for the pipeline.

Within a month of receiving Governor Whitmer's notice of revocation, Enbridge responded by filing this suit in federal court, seeking to enjoin Governor Whitmer's revocation efforts. In addition, Enbridge timely removed Governor Whitmer's state court case to federal court. *See id.* at 962. After the federal district court held that Enbridge's removal of Governor Whitmer's state case to federal court was proper, Governor Whitmer voluntarily dismissed the case. *See id.* at 963. She did not, however, withdraw the notice of revocation.

After that voluntary dismissal, Enbridge sought to remove General Nessel's case to federal court as well. *Id.* The federal district court denied General Nessel's motion to remand the case to state court, and General Nessel appealed the district court's ruling to this court. In June 2024, we reversed and ordered that the case be remanded to state court. *See id.* at 961, 972. We explained that Enbridge had failed to timely remove General Nessel's case to federal court, *see* 28 U.S.C § 1446(b), and that no equitable exceptions to the statutory deadline for removal applied. *Nessel*, 104 F.4th at 961.

Thus, General Nessel's case now proceeds in state court while Enbridge's action to enjoin the revocation order proceeds in federal court. Enbridge's action is the subject of this appeal.**³**

**B. Enbridge's Federal Case**

In this lawsuit, Enbridge sued two Michigan officials, Governor Whitmer and Director Eichinger, in their official capacities, claiming that the officials' efforts to shut down the operation of the pipeline violated federal law and the Constitution. *First*, Enbridge alleged that the officials' attempts to shut down the pipeline based on Enbridge's violations of the easement's technical safety standards violated the Supremacy Clause, as state pipeline safety standards are generally preempted by the federal Pipeline Safety Act. *See* 49 U.S.C. §§ 60102, 60104(c). *Second*, Enbridge contended that because the pipeline supplied oil to refineries in several states and in Canada, the pipeline was a critical instrument of commerce, and the Michigan officials' attempts to shut down the pipeline violated the Interstate Commerce Clause by unreasonably burdening or discriminating against interstate commerce. *Third*, Enbridge alleged that the officials' actions violated the Foreign Commerce Clause and the related Foreign Affairs doctrine.

Enbridge requested declaratory and injunctive relief. As to declaratory relief, Enbridge sought a declaration that the defendants' attempts to shut down the pipeline violated federal law and the Constitution. Enbridge also requested an injunction "prohibiting Defendants from taking any steps to impede or prevent" the operation of the pipeline, "including the revocation or termination of the . . . Easement based on the alleged non-compliance with pipeline safety standards in the Easement." Compl., R. 1, PageID 19.

---

**³**Because Nessel's state court action is proceeding concurrently to this litigation and appears to raise similar issues to those raised by Enbridge here, we ordered supplemental briefing regarding whether abstention under *Younger v. Harris*, 401 U.S. 37 (1971), is appropriate. Having reviewed the parties' briefs, we conclude that we lack jurisdiction to consider the *Younger* issue at this juncture. In this appeal, the collateral order doctrine supplies appellate jurisdiction over the Eleventh Amendment issue. *See Lowe v. Hamilton Cnty. Dep't of Job & Fam. Servs.*, 610 F.3d 321, 323 (6th Cir. 2010). That limited appellate jurisdiction does not extend to the *Younger* issue because the issue is not "inextricably intertwined" with the sovereign immunity question. *Summers v. Leis*, 368 F.3d 881, 889 (6th Cir. 2004) (citation omitted). We accordingly leave the *Younger* question for the district court to decide in the first instance.

The defendants moved to dismiss, arguing that sovereign immunity under the Eleventh Amendment deprived the court of jurisdiction over Enbridge's claims. The defendants explained that because Enbridge's lawsuit was effectively against the State, the lawsuit was barred by sovereign immunity and did not fall within the *Ex parte Young* doctrine, which gives federal courts jurisdiction over claims for prospective injunctive relief against state officials.

The district court disagreed, holding that Enbridge's action fell within the *Ex parte Young* doctrine and that no limitation to the doctrine barred the suit. The defendants timely appealed the district court's ruling.

## ANALYSIS

We review a district court's denial of a motion to dismiss on Eleventh Amendment immunity grounds de novo. *See Block v. Canepa*, 74 F.4th 400, 407 (6th Cir. 2023).

Under the Eleventh Amendment, states generally have sovereign immunity from suit in federal court. *See Va. Off. for Prot. & Advoc. v. Stewart* (*VOPA*), 563 U.S. 247, 253–54 (2011). In *Ex parte Young*, 209 U.S. 123 (1908), however, the Supreme Court established "an important limit on the sovereign-immunity principle," *VOPA*, 563 U.S. at 254. The *Young* doctrine "rests on the premise—less delicately called a 'fiction,'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Id.* at 255 (citation omitted). So suits against state officials are treated differently for sovereign immunity purposes. Under the *Young* doctrine, "a suit that claims that a state official's actions violate the constitution or federal law is not deemed a suit against the state," and so is not barred by sovereign immunity, so long as the suit seeks only "equitable and prospective relief" against a named state official. *Westside Mothers v. Haveman*, 289 F.3d 852, 860 (6th Cir. 2002).

To determine whether a suit falls within the *Young* doctrine, a court ordinarily "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (alteration in original) (citation omitted). If the complaint satisfies those two requirements—an allegation of a present violation of federal law

and a request for prospective relief—we ordinarily conclude that *Young* applies. Yet, the *Young* doctrine does not allow a federal action to proceed "in every case where prospective declaratory and injunctive relief is sought against an officer." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997). However a plaintiff's complaint is framed, if the suit "is in fact against the sovereign" rather than a named official, Eleventh Amendment immunity still applies. *VOPA*, 563 U.S. at 256 (citation omitted). That's not an easy distinction to make because *Young*, as mentioned, is premised on the "fiction" that an officer suit is really against the officer and not against the state. To distinguish between the two—a *Young* officer suit and a suit that is "in fact against the sovereign"—the Supreme Court instructs us to examine "the *effect* of the relief sought," *id.* (citation omitted), and it has carved out several narrow categories of officer suits that it says lie outside *Young*'s fiction, *see, e.g., Coeur d'Alene*, 521 U.S. at 287–88; *Edelman v. Jordan*, 415 U.S. 651, 666–67 (1974); *In re Ayers*, 123 U.S. 443, 502–03 (1887).

A review of Enbridge's complaint demonstrates that, on its face, it meets the formal *Ex parte Young* requirements—that is, Enbridge seeks prospective injunctive relief against the named state officials for allegedly violating federal law. The defendants do not dispute as much. They contend, however, that the suit is nonetheless barred by the Eleventh Amendment because a careful examination of the effect of the relief sought demonstrates that the suit is in fact against the State. *First*, relying on *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, the defendants argue that the suit is barred because it is the functional equivalent of a quiet title action against the State and would unduly infringe on the State's sovereignty interests in its submerged bottomlands. *Second*, the defendants argue that the suit is barred because it effectively seeks "an order for specific performance of a State's contract." *VOPA*, 563 U.S. at 257. For both reasons, they contend, Enbridge's suit does not fall within the *Young* doctrine, so it's barred by sovereign immunity.

We turn to each of these arguments, concluding that neither is persuasive. We accordingly affirm the district court and hold that Enbridge's claims fall within the *Young* doctrine.

### I. *Coeur d'Alene*

We turn first to the defendants' argument that Enbridge's action falls within the exception to the *Young* doctrine articulated by the Supreme Court in *Coeur d'Alene*. In that case, the Coeur d'Alene Tribe sued state officials in federal court, alleging that it owned the "submerged lands" of Lake Coeur d'Alene in Idaho. 52 U.S. at 264–65. Along with seeking title to the submerged lands, the Tribe sought a declaration establishing its entitlement to the "exclusive use and occupancy and the right to quiet enjoyment" of the lands and a "declaration of the invalidity of all Idaho statutes, ordinances, regulations, customs, or usages which purport[ed] to regulate, authorize, use, or affect in any way" the lands. *Id.* at 265. The Tribe also sought injunctive relief "prohibiting defendants from regulating, permitting, or taking any action in violation of the Tribe's rights of exclusive use and occupancy, quiet enjoyment, and other ownership interest in the submerged lands." *Id.*

The Supreme Court held that the suit was barred by the Eleventh Amendment. The Court acknowledged that, at first glance, the Tribe's complaint fit within the requirements of the *Young* doctrine because it sought prospective injunctive and declaratory relief against state officials. *Id.* at 281. But, the Court explained, the "real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading." *Id.* at 270. So the Court examined the Tribe's claims more closely, with an eye to the "realities of the relief the Tribe demand[ed]." *Id.* at 282. The Court acknowledged that the parties agreed that the Tribe could not maintain a quiet title suit against the State in federal court, "absent the State's consent." *Id.* at 281. Despite that prohibition, the relief the Tribe sought was "close to the functional equivalent of quiet title in that substantially all benefits of ownership and control would shift from the State to the Tribe." *Id.* at 282. The Court emphasized that the Tribe sought "far-reaching and invasive relief"—a "determination that the lands in question are not even within the regulatory jurisdiction of the State," and injunctive relief that would "bar the State's principal officers from exercising their governmental powers and authority over the disputed lands and waters." *Id.* In effect, then, the suit would "diminish, even extinguish, the State's control" over the disputed lands. *Id.*

The Court further explained that the threatened degree of intrusion into the State's sovereignty was particularly troubling because the case concerned "submerged lands," which "uniquely implicate sovereign interests." *Id.* at 283–84. Those lands, the Court elaborated, have a "unique status in the law" and are "infused with a public trust the State itself is bound to respect." *Id.* at 283. Because the Tribe's suit was the "functional equivalent of a quiet title action which implicates special sovereignty interests," the Court concluded that, considering the "particular and special circumstances" presented by the case, the Tribe's lawsuit was too intrusive into Idaho's state sovereignty to truly be considered a suit against a state officer—as *Young* pretends—as opposed to against the state itself. *Id.* at 281, 287. Therefore, sovereign immunity deprived the Court of jurisdiction over the Tribe's suit.

The defendants contend that Enbridge's lawsuit is "virtually identical" to *Coeur d'Alene*. Appellants Br. at 22. We disagree. To be sure, as even Enbridge acknowledges, this case implicates the State of Michigan's "special sovereignty interests" in the submerged bottomlands of the Straits of Mackinac. *Coeur d'Alene*, 521 U.S. at 281, 283. But Enbridge seeks only declaratory and injunctive relief requiring the defendants not to interfere with the operation of the pipeline. The effect of that requested relief would not deprive the state of "substantially all benefits of ownership and control" over the State's submerged lands. *Id.* at 282. Nor would it remove the lands from the State's "regulatory jurisdiction" or prevent the State's officers from "exercising their governmental powers and authority" over the lands. *Id.* The requested relief is accordingly not nearly as intrusive into state sovereignty as the Tribe's requested relief in *Coeur d'Alene*.

To see why, start with the property interest at stake in Enbridge's action. Enbridge's claims pertain only to its ongoing easement on State-owned land—Enbridge does not seek to divest the State of full and exclusive ownership of, or jurisdiction over, the land. Indeed, even if a court granted all the relief Enbridge has requested, the State would still retain title to and ownership over the land. Enbridge's requested relief, in other words, would not deprive the State of all the sticks in the so-called bundle of sticks representing the State's property rights. The State seemingly could, for example, sell the disputed parcel subject to an encumbrance (that is, Enbridge's easement). And the State would still retain the right to exclude entities and

No. 24-1608            *Enbridge Energy, LP, et al. v. Whitmer, et al.*            Page 10

individuals other than Enbridge from the parcel. Thus, unlike in *Coeur d'Alene*, Enbridge's requested relief would not result in "substantially all benefits of ownership and control" shifting from the State to Enbridge. *Id.*

The defendants appear to recognize that Enbridge's claims would not divest the State of ownership of or jurisdiction over the disputed land entirely. In fact, at oral argument, the defendants acknowledged that Enbridge's lawsuit would not cause the State to lose "every single stick in the bundle" of sticks that represents property rights. Oral Arg. Rec. at 9:22–9:35. Instead, they argue that *Coeur d'Alene* extends to actions that operate to "quiet title" even when a plaintiff seeks less than "substantially all benefits of ownership and control" over a property. 521 U.S. at 282. They explain that quiet title actions are brought under state law, and under Michigan state law, an action seeking a property interest less than fee simple ownership is still a claim to quiet title. Thus, in the defendants' view, because Enbridge's claims pertain to Enbridge's easement and an easement claim would be termed "quiet title" under Michigan law, *Coeur d'Alene* bars the suit.

We do not think the holding of *Coeur d'Alene* sweeps so broadly as to encompass any claim implicating a state's property interest. For starters, the defendants' emphasis on the Michigan state law definition of "quiet title" is misplaced. In *Coeur d'Alene*, the Supreme Court looked not to the technical definition of quiet title, whether under state law or otherwise, but to the degree of intrusion into state sovereignty threatened by the Tribe's requested relief.[4] And the Court took pains to emphasize that the Tribe's case fell outside the bounds of the *Young* doctrine because of the "particular and special circumstances" present there—the Tribe's requested relief was unusually "far-reaching and invasive" in that it would have resulted in the State having virtually *no* control over the disputed lands. *Id.* at 282, 287. The defendants do not persuade us that Enbridge's relief, which would not deprive the State of "substantially all benefits of

---

[4]The defendants' related emphasis on the fact that Enbridge has "claimed that it owns a prescriptive easement over" the land in the Attorney General's state court litigation is likewise unpersuasive. Appellants Br. at 32. As we have noted, the state law definition of "quiet title" does not control the sovereign immunity inquiry. And, in any event, any defenses that Enbridge has asserted in the state court proceeding are irrelevant to the determinative question here: whether Enbridge's federal court claims are so intrusive into the State's sovereignty that the claims are in fact against the State. *See VOPA*, 563 U.S. at 256.

No. 24-1608                *Enbridge Energy, LP, et al. v. Whitmer, et al.*                Page 11

ownership and control" over the land, falls within the *Coeur d'Alene* limitation on the *Young* doctrine. *Id.* at 282.

Our prior cases also reflect our unwillingness to accept a state's invocation of *Coeur d'Alene* unless the plaintiff's claims implicate a near-total property interest. In *Arnett v. Myers*, 281 F.3d 552 (6th Cir. 2002), for example, a family sued state officials, asserting ownership over duck blinds on a lake and seeking declaratory and injunctive relief protecting their riparian rights. *Id.* at 557–59. We held that *Coeur d'Alene* did not bar the family's suit. *Id.* at 567–68. We reasoned that the suit was not "in the nature of a quiet title action" because the family did not assert "sovereign ownership" over or claim "entitlement to the exclusive use and occupancy of" the lake. *Id.* at 568. And we emphasized that we did "not read the ruling of *Coeur d'Alene* to extend to every situation where a state property interest is implicated." *Id.* Conversely, we held that *Coeur d'Alene* barred a couple's lawsuit regarding property rights over a right-of-way providing access to Lake Michigan in *MacDonald v. Village of Northport*, 164 F.3d 964 (6th Cir. 1999), because the couple sought a declaration that part of the "right-of-way was the 'lawful property of Plaintiffs.'" *Id.* at 972.

Emphasizing that courts must examine the "*effect* of the relief sought" by plaintiffs, the defendants also argue that Enbridge's claims severely impact the State's ability to exercise its regulatory and police powers over the disputed land. *VOPA*, 563 U.S. at 256 (citation omitted). True enough: Enbridge requests injunctive relief prohibiting the defendants from "taking any steps to impede" the operation of the pipeline, and that relief would no doubt have an impact on the State's ability to exercise its regulatory authority. Compl., R. 1, PageID 19. But even still, unlike in *Coeur d'Alene*, Enbridge does not seek to extinguish the State's ability to exercise its regulatory and sovereign authority over the disputed lands entirely. *See* 521 U.S. at 289 (O'Connor, J., concurring in part and concurring in the judgment) (emphasizing that the Tribe's lawsuit sought to "eliminate altogether the State's regulatory power over the submerged lands"). Enbridge seeks only to bring the State's regulatory activities into compliance with federal law and the Constitution. Accordingly, even if Enbridge received its requested relief, the State would retain the ability to regulate the submerged lands so long as its regulation did not violate federal law. *See Hamilton v. Myers*, 281 F.3d 520, 528 (6th Cir. 2002) (reasoning that the fact

that the requested relief would require the state "to tailor its regulatory scheme to respect the [plaintiffs'] constitutionally protected [property] rights" does not bring a case within *Coeur d'Alene*'s limitation); *Arnett*, 281 F.3d at 568 (reasoning that *Coeur d'Alene* did not bar a suit in part because, even if the plaintiffs prevailed, the property would "remain within the sovereign control of the State of Tennessee" and would "continue to be subject to Tennessee's regulatory authority"). Enbridge assures us that its requested injunction would not prohibit state regulation that has an "incidental" effect on the operation of the pipeline. Oral Arg. Rec. at 25:35–25:59. So the State could, for example, impose land use regulations on the disputed land, so long as those regulations did not impede the operation of the pipeline or otherwise violate federal law.

At bottom, this case does not present the "particular and special circumstances" the Court confronted in *Coeur d'Alene*: Enbridge's requested relief would not divest the State of full ownership and would not eliminate the State's regulatory power over the land. 521 U.S. at 287. We accordingly hold that Enbridge's case does not satisfy the high bar set forth in *Coeur d'Alene* for depriving federal courts of jurisdiction over suits that could otherwise proceed under *Ex parte Young*.

## II.  Specific Performance of a Contract

The defendants also argue that Enbridge's lawsuit falls outside of the *Young* doctrine because it seeks "an order for specific performance of a State's contract." *VOPA*, 563 U.S. at 256–57. The easement is a contract in which the State agreed to allow Enbridge to operate the pipeline. So, the defendants argue, by seeking an injunction preventing the defendants from interfering with the pipeline, Enbridge is attempting to compel the defendants to continue fulfilling their side of that contract. Because that amounts to a request for specific performance of the State's contractual obligations under the easement, the defendants contend that the *Young* doctrine does not apply and sovereign immunity bars Enbridge's suit.

This argument fails because it ignores the legal basis of Enbridge's claims. Enbridge does not advance a contract claim at all: Enbridge's lawsuit is not premised on allegations that the State has breached or failed to perform its obligations under the easement, and Enbridge does not request relief requiring the State to perform under the contract. Rather, Enbridge contends

No. 24-1608                *Enbridge Energy, LP, et al. v. Whitmer, et al.*                Page 13

that the efforts of the defendants (individual state officers) to stop the operation of the pipeline violate federal law and the Constitution. And Enbridge requests a quintessential *Young* injunction prohibiting the defendants from violating federal law.

The defendants do not persuade us that Enbridge's suit is nonetheless impermissible simply because Enbridge's requested injunction would also have the effect of keeping the State in compliance with the easement. Under the defendants' logic, if a state official is violating federal law, the fact that an existing contract also obligates the state to take the same or similar action would effectively immunize the state official from being subject to an *Ex parte Young* suit. State contracts could thereby deprive plaintiffs of a means to vindicate their rights under the Constitution and federal statutes. We reject this expansive view of when specific performance blocks an *Ex parte Young* action.

The defendants' proffered precedents do not convince us otherwise. If anything, they reinforce our view that, to invoke this limitation on *Ex parte Young*, a plaintiff's action must turn on breach of a state contract, not on compliance with federal laws that create state obligations irrespective of contractual terms. The defendants rely primarily on two cases decided before *Ex parte Young* itself, *In re Ayers*, 123 U.S. 443 (1887), and *Hagood v. Southern*, 117 U.S. 52 (1886), where the Supreme Court held that sovereign immunity barred the plaintiffs' suits because they sought specific performance of a contract. *Ayers* and *Hagood* involved quite similar facts. In both cases, the petitioners held state-issued bonds or coupons, and the state then rendered the bonds and coupons essentially worthless. *See Ayers*, 123 U.S. at 446–48, 492–94; *Hagood*, 117 U.S. at 63–67. The petitioners filed suit against state officials, contending that a state law rendering the bonds and coupons ineffective had impaired a contract in violation of the Contract Clause of the Constitution. *See Ayers*, 123 U.S. at 492–93; *Hagood*, 117 U.S. at 67. The plaintiffs sought injunctive relief to enforce their contract with the state. *See Ayers*, 123 U.S. at 445–49 (plaintiffs seeking to enjoin state officials from bringing tax collection suits against individuals who had paid their taxes with the coupons); *Hagood*, 117 U.S. at 65, 68 (plaintiffs seeking to compel state officials to levy a tax to fund the now-worthless bonds). In holding that the cases could not proceed because of sovereign immunity, the *Hagood* Court explained that its prior precedents had drawn a "line" between two types of cases. 117 U.S. at

70.   One, cases in which the requested relief required the defendants to perform, through "affirmative official action," an "obligation" that "belongs to the state in its political capacity" — that is, a contractual commitment the state decided to assume. *Id.* And two, cases against defendants who allegedly violated the plaintiffs' federal rights while "claiming to act as officers of the state"—that is, *Ex parte Young* actions. *Id.*

Contrary to the defendants' arguments, this case does not fall on the specific performance side of that line.  Unlike in *Hagood* and *Ayers*, the thrust of Enbridge's claims is not that the state has breached a contract and that injunctive relief against a state officer is required to prevent that breach from continuing.  So Enbridge's requested relief would not require the defendants to take any "affirmative official action" to perform an "obligation" that "belongs to the state in its political capacity." *Id.*  The defendants themselves would be required only to *cease* conduct that allegedly violates federal law.  Enbridge's suit is not, therefore, "in fact against the sovereign." *VOPA*, 563 U.S. at 256 (citation omitted).

That conclusion is reinforced by the Supreme Court's treatment of *Ayers* and *Hagood* in *Ex parte Young* itself.  There, the Court distinguished *Ayers* and *Hagood* from cases that seek to restrain a state official from violating federal law, explaining that the relief sought by the plaintiffs in both cases amounted to an "attempt to make the state itself, through its officers, perform its alleged contract." *Young*, 209 U.S. at 151.  The Court emphasized that, in *Ayers*, the plaintiffs had requested an injunction against officers "on the ground that," if the officers were not enjoined, their actions "would be a breach of a contract with the state." *Id.* at 152.  Accordingly, the Court characterized *Ayers* and *Hagood* as reflecting the principle that when the ground for a suit is breach of a state contract, the suit is in effect against the state, and therefore barred by the Eleventh Amendment.  The Court did not characterize those cases as holding that lawsuits that would otherwise permissibly seek prospective injunctive relief against state officers are barred whenever such suits would also have the effect of keeping a state in compliance with a contract.

Thus, we understand that the *Young* doctrine does not apply where the basis of the lawsuit is a state's breach of a contract and the requested relief amounts to an order requiring the state to comply with its contractual obligations.  *See Ga. R.R. & Banking Co. v. Redwine*,

342 U.S. 299, 304 (1952) (rejecting an argument that a suit impermissibly sought specific performance of a state contract and emphasizing that the plaintiff's complaint was "not framed as a suit for specific performance"). But that does not describe this case. We accordingly conclude that Enbridge's suit does not impermissibly seek specific performance of a state contract.

The defendants' reliance on the Third Circuit's decision in *Waterfront Commission of New York Harbor v. Murphy*, 961 F.3d 234 (3rd Cir. 2020), *cert. denied*, 142 S. Ct. 561 (2021), does not alter our conclusion. In that case, the New Jersey legislature passed a statute seeking to withdraw from an interstate compact between New Jersey and New York that gave the Waterfront Commission of New York Harbor powers over the harbor's business operations. *See id.* at 236–37. The statute required the New Jersey Governor to give notice regarding New Jersey's intention to withdraw. *Id.* at 237. The Waterfront Commission sued the Governor, requesting a declaration that the statute violated the Compact and Supremacy Clauses of the Constitution and an injunction against enforcement of the statute. *Id.* The Third Circuit held that the Commission's suit was barred by the Eleventh Amendment because it sought specific performance of a contract. *Id.* at 241.

*Waterfront Commission* is quite unlike this case. In *Waterfront Commission*, the only federal law that the Commission argued that the Governor was violating was effectively the contract itself: the Commission argued that the compact had become federal law once Congress had approved it, so violating the compact also meant violating federal law. *See* Compl. at 18–20, *Waterfront Comm'n of N. Y. Harbor v. Murphy*, 429 F. Supp. 3d 1 (D.N.J. 2018) (No. 18-650), ECF No. 1. In that sense, the Commission's contract claim and its federal claim—that is, the basis for its *Ex parte Young* suit—were one and the same. At bottom, the Commission sought to force the state to abide by its obligations under the compact. That is a distinct situation from here, where none of Enbridge's claims depend on the terms of the easement itself, but on wholly separate federal laws and the Constitution. We accordingly hold that Enbridge's suit does not seek specific performance of a state contract and falls within the bounds of *Ex parte Young*.

No. 24-1608               *Enbridge Energy, LP, et al. v. Whitmer, et al.*               Page 16

## CONCLUSION

We hold that Enbridge's lawsuit is not barred by sovereign immunity and affirm the district court's order denying the defendants' motion to dismiss.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 24-1608

ENBRIDGE ENERGY, LP; ENBRIDGE ENERGY COMPANY, INC.; ENBRIDGE ENERGY PARTNERS, L.P.,

    Plaintiffs - Appellees,

    v.

GRETCHEN WHITMER, the Governor of the State of Michigan in her official capacity; SCOTT BOWEN, Director of the Michigan Department of Natural Resources in his official capacity,

    Defendants - Appellants.

> **FILED**
> Apr 23, 2025
> KELLY L. STEPHENS, Clerk

Before: MOORE, KETHLEDGE, and BLOOMEKATZ, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's order denying defendants' motion to dismiss is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_Kelly L. Stephens_

Kelly L. Stephens, Clerk