UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ENBRIDGE ENERGY, LIMITED PARTNERSHIP; ENBRIDGE ENERGY COMPANY, INC.; and ENBRIDGE ENERGY PARTNERS, L.P.,<br><br>Plaintiffs,<br><br>v.<br><br>GRETCHEN WHITMER, the Governor of the State of Michigan in her official capacity, and DANIEL EICHINGER, Director of the Michigan Department of Natural Resources in his official capacity,<br><br>Defendants. | No. 1:20-cv-01141-JTN-RSK<br><br>HON. ROBERT J. JONKER<br><br>***AMICUS CURIAE* BRIEF OF MINNESOTA [ET AL] IN SUPPORT OF DEFENDANTS' OPPOSITION TO SUMMARY JUDGMENT** |

Oliver J. Larson (MN Bar No. 0392946)
Ryan V. Petty (MN Bar No. 0401053)
Assistant Attorneys General
Attorneys for State Amici
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 900
St. Paul, MN 55101-2127
(651) 757-1265
oliver.larson@ag.state.mn.us
ryan.petty@ag.state.mn.us

Dated: September 12, 2025

## INTRODUCTION AND INTERESTS OF AMICI

The amici[1] are states with an interest in preserving their powers under the public trust doctrine, which confers broad plenary authority on states to manage submerged lands. The amici submit this brief in support of the Defendants' opposition to the Plaintiffs' motion for summary judgment.

## ARGUMENT

The public trust doctrine has been established in the United States since the 19th century and traces its origins to Roman law and English common law. *PPL Montana, LLC v. Montana*, 565 U.S. 576, 603 (2012). Under the doctrine, states hold important natural resources such as tidelands, submerged lands, and the beds of inland navigable waters in trust for the benefit of the public. Although the outer limits of the public trust doctrine vary from state to state, the doctrine universally applies to submerged lands beneath navigable waters and grants states the power to control such lands. This authority stems from states' inherent sovereignty. Title to submerged lands passed to each state upon its admission to the Union.[2] *Montana v. United States*, 450 U.S. 544, 552 (1981); *Oregon v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 373-74 (1977). Because the public trust doctrine circumscribes states' power to alienate such sovereign public trust lands, states retain the plenary power to revoke previously issued authorization for uses of those lands.

The seminal U.S. Supreme Court case on the public trust doctrine, *Illinois Cent. Railroad Company v. Illinois*, addressed and settled the question at issue here more than 125 years ago.

---

[1] The State Amici consist of the States of Minnesota, Delaware, Illinois, Maryland, Massachusetts, New Jersey, New Mexico, New York, Oregon, and Wisconsin.

[2] State title to submerged lands arises under the "equal footing" doctrine and is "conferred not by Congress but by the Constitution itself." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 283 (1997) (quoting *Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 374 (1977)).

Though the *Illinois Central* case involved Illinois law, "the general principle [of the public trust] and the exception [allowing for alienation of lakebeds in limited instances] have been recognized the country over." *Appleby v. City of New York*, 271 U.S. 364, 395 (1926).

Plaintiffs argue that the strict limits on alienability of sovereign lands and Michigan's powers to manage those lands for public purposes under the public trust doctrine have been preempted by the Pipeline Safety Act. In essence, Plaintiffs argue that while a state would normally have plenary authority to control easements over submerged lands, if a state does so in service to concerns about whether a pipeline should run through a sensitive natural ecosystem, the state's hands are tied because the Pipeline Safety Act preempts state regulation in service of pipeline safety or environmental protection. Plaintiffs fail to cite on-point authority, and their argument has no merit in any event.

The State Amici have an interest in preserving their long-standing authority over submerged lands, and they submit this brief in support of Michigan's argument that the Pipeline Safety Act does not preempt Michigan's right to control who may use Michigan's state lands and how they may use them.[3]

## I. THIS CASE IMPLICATES THE PUBLIC TRUST DOCTRINE.

The public trust doctrine embodies the fact that states hold sovereign lands in trust for, and manage such resources for, the public benefit. *See Newton v. Mahoning Cnty. Comm'rs*, 100 U.S. 548, 554 (1879) (discussing inherent powers of states—such as the police power—of which states cannot divest themselves). One inherent aspect of sovereignty is the power to preserve public uses of navigable waters and lakebeds from private interruption and encroachment. *Ill. Cent.*, 146 U.S.

---

[3] The amici confine their argument for this brief to the public trust issue and whether Michigan's public trust authority is preempted by the Pipeline Safety Act.

at 436; *see also Corvallis Sand & Gravel Co.*, 429 U.S. at 373-74; *Glass v. Goeckel*, 703 N.W.2d 58, 64-65 (Mich. 2005).

In *Illinois Central*, the Supreme Court examined the relationship between the public's right to use navigable waters and the state's ability to convey property rights in the lakebeds of those waters to a private party. 146 U.S. at 438-41. The question in *Illinois Central* was whether the state could, consistent with the public trust doctrine, permanently convey title to the bed of Lake Michigan to a private entity—the Illinois Central Railroad. *Id.* at 452-55. The Court concluded that Illinois could not, and that "[a]ny grant of the kind is necessarily revocable, and the exercise of the trust by which the property was held by the state can be resumed at any time." *Id.* at 455. In other words, "[e]very succeeding legislature possesses the same jurisdiction and power with respect to [the public trust] as its predecessors. The latter have the same power of repeal and modification which the former had of enactment, neither more nor less." *Newton*, 100 U.S. at 559.

As a result, the Supreme Court held that Illinois could revoke its grant of title to the lakebed to the railroad. *Ill. Cent.*, 146 U.S. at 460 ("There can be no irrepealable contract in a conveyance of property by a grantor in disregard of a public trust, under which he was bound to hold and manage it."). The Court explained:

> The harbor of Chicago is of immense value to the people of the state of Illinois, in the facilities it affords to its vast and constantly increasing commerce; and the idea that its legislature can deprive the state of control over its bed and waters, and place the same in the hands of a private corporation, created for a different purpose—one limited to transportation of passengers and freight between distant points and the city—is a proposition that cannot be defended.

*Id.* at 454. Subsequent authority applying the public trust doctrine is in accord. *See Corvallis Sand & Gravel Co.*, 429 U.S. at 373-74 (holding that because absolute title to the beds of navigable waters passed to states upon admission to the Union, and federal government held such lands in

trust for states pending their admission, federal government had no power to dispose of such lands); *accord City of Berkeley v. Super. Ct.*, 606 P.2d 362, 367 (Cal. 1980) (holding that tidelands were subject to public trust and title was thus erroneously conveyed to private parties).

*Illinois Central* controls the application of the public trust doctrine here. The lakebed beneath the Mackinac Straits is subject to Michigan's power to manage the lands for the public benefit. *Ill. Cent.*, 146 U.S. at 455-56. Accordingly, no private entity can enjoy permanent property rights to the sovereign lakebed. *Saint Anthony Falls-Water-Power Co. v. Bd. of Water Comm'rs*, 168 U.S. 349, 359 (1897) (citing *Martin v. Waddell,* 41 U.S. 367, 410 (1842) (holding that navigable waters and soils under them are owned by the states in their sovereign capacity for the benefit of the public and the government cannot transfer title to either the navigable waters or the beds to private land owners)); *see also Montana*, 450 U.S. at 552; *City of Berkeley*, 606 P.2d at 367. Michigan's right to preserve its sovereign lands for the public's benefit represents a central aspect of its sovereignty with which Plaintiffs cannot interfere.

## II. THE PUBLIC TRUST DOCTRINE IS NOT PREEMPTED BY THE PIPELINE SAFETY ACT.

Under the public trust doctrine, Michigan is free to exercise its public trust powers to determine whether pipelines may cross its sovereign lands and, if so, where that may occur. Indeed, the Pipeline Safety Act recognizes Michigan's sovereign power to do so: the Act "does not authorize the Secretary of Transportation to prescribe the location or routing of a pipeline facility." 49 U.S.C. § 60104(e). And a state decision about whether a company can locate and operate a pipeline on state submerged lands, i.e., "the location or routing of a pipeline facility," *id*., is qualitatively different from a state decision to regulate how a pipeline operator must design, construct, maintain, test, and operate the pipeline, i.e., a state "safety standard," *id*. § 60104(c).

Accepting for argument's sake Plaintiffs' premise that state authority over submerged lands *could* be preempted by the Pipeline Safety Act, the law does not preempt their plenary authority.

The preemption doctrine derives from the Supremacy Clause of the United States Constitution. *See* U.S. Const. art. VI, cl. 2. Based on that doctrine, a federal law can supersede a state law, but *only* if Congress intended it to do so. *Wyeth v. Levine*, 555 U.S. 555, 565 n.3 (2009) ("[R]espect for the states as independent sovereigns in our federal system leads [courts] to assume that Congress does not cavalierly pre-empt state [] law." (cleaned up)). In determining Congressional intent, courts "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* The "presumption against preemption is heightened where federal law is said to bar state action in fields of traditional state regulation." *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 334 (2008).

Plaintiffs assert that the Pipeline Safety Act expressly preempts Michigan's revocation of an easement it issued to authorize the pipeline company to place a pipeline on the state's submerged lands. Express preemption exists if the federal law expressly states that it intends to preempt state or local laws on the same subjects. *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008). "If a federal law contains an express pre-emption clause, it does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains." *Id.* The presumption against preemption applies to express preemption. *See id.* at 77.

To argue that the Pipeline Safety Act expressly preempts the public trust, Plaintiffs turn to the following clause: "A State authority may not adopt or continue in force safety standards for interstate pipeline facilities or interstate pipeline transportation." (Plaintiffs' Mem. at 9 (quoting 49 U.S.C. 60104(c)). Plaintiffs' reliance on that provision is erroneous, because the provision does not expressly foreclose Michigan's ability to exercise its public trust powers over the placement and location of a pipeline beneath the Straits of Mackinac on Michigan's sovereign lands. *See PPL*

*Montana*, 565 U.S. at 604 ("Under accepted principles of federalism, the States retain residual power to determine the scope of the public trust over waters within their borders[.]").

**First**, the Pipeline Safety Act is not intended to cover all aspects of environmental risk posed by pipeline siting and routing. The preemption clause in 49 U.S.C. § 60104(c) of the Pipeline Safety Act (relied on by Plaintiffs) is explicitly limited by section 60104(e), which provides that the Secretary of Transportation, whom the statute empowers to set safety standards, has no authority "to prescribe the *location or routing* of a pipeline facility." (emphasis added). 49 U.S.C. § 60104(e). That limitation makes clear that Congress did *not* intend the Pipeline Safety Act to preempt state and local authority over the location or routing or pipelines. *See Portland Pipe Line Corp.*, 288 F. Supp. 3d 321, 430-31 (D. Me. 2017) (relying in part on the limitation in section 60104(e) to conclude that a prohibition on crude oil transfers is not preempted by the Pipeline Safety Act); *Tex. Midstream Gas Services, LLC v. City of Grand Prairie*, 608 F.3d 200, 211 (5th Cir. 2010) ("[T]he [Pipeline Safety Act] itself only preempts *safety* standards."). Indeed, a House Committee Report confirms that interstate oil pipelines "are subject to the routing and *environmental assessment* requirements of the individual states they traverse." H.R. Rep. No. 102-247, pt.1, at 13-14 (1991) (emphasis added). Michigan's exercise of its public trust powers in this case addresses the *location* of the pipeline—not the design, installation, inspection, emergency plans and procedures, testing, construction, operation, replacement, or maintenance of the pipeline.

Plaintiffs assert that once Michigan approved the location of the pipeline, its authority of routing ceased. Plaintiffs' Mem. at 14. That argument, however, misreads the limitation to the preemption provision, which prescribes only what the *Secretary of Transportation* may not do. 49 U.S.C. § 60104(e). The limitation places no restrictions on states over location and routing, even after a pipeline has been constructed. And that is sensible because myriad circumstances may

arise that require a pipeline to be rerouted or relocated. Plaintiffs' position, however, would tie the hands of state and local governments in perpetuity and preclude them from adapting to changing land use needs. Simply put, the Pipeline Safety Act's preemption clause expressly excludes routing or locational siting concerns from its preemptive scope and expressly places those within state and local authority. Plaintiffs cite no authority involving the Pipeline Safety Act that applies preemption in such a manner.

**Second**, even if section 60104(e) did not place the routing and location of oil pipelines explicitly outside of the Pipeline Safety Act's preemptive scope, the public trust doctrine cannot fairly be characterized as a "safety standard" as that term is used in the Act's preemption clause. Importantly, courts must construe preemption clauses narrowly in light of the presumption against the preemption of state police power regulations. *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 519 (1992). And a narrow reading here would forecloses the conclusion that Michigan is attempting to "adopt or continue in force safety standards." 49 U.S.C. 60104(c). If a "requirement is not a safety standard in letter, purpose, or effect, it may remain in force." *Tex. Midstream Gas Servs., LLC*, 608 F.3d at 212. Although the Pipeline Safety Act is intended to cover the design and maintenance of interstate pipelines; it is not intended to cover all aspects of environmental risk posed by pipeline siting and routing. *Id.* And it neither preempts nor otherwise conflicts with Michigan's sovereign power to dictate the *location* of pipelines that cross its sovereign lands.

Case law supports Michigan's position. In *Portland Pipe Line Corp. v. City of Portland*, a pipeline company argued that a local ordinance prohibiting certain operations was preempted as a safety standard because it was "designed to stop the transportation of oil through interstate pipeline facilities based on human and environmental health concerns." 288 F. Supp. 3d at 408. The court disagreed. The court held that the ordinance at issue, which the parties agreed prohibited the

pipeline company from offloading crude oil from a pipeline originating in Canada onto vessels at a Maine harbor, was a "prohibition" and not a preempted "standard." *Id.* at 429-30. The same is true here. Thus, even if Plaintiffs' pipeline is prohibited from traversing the Mackinac Straits due to what Plaintiffs characterize as "safety concerns," Plaintiffs' Mem. at 8, that outcome cannot be characterized fairly as flowing from the application of a state "safety *standard*." Determining whether a pipeline may be located on and cross sovereign lands imposes no safety standard governing how such a pipeline must be operated. Such a determination is instead grounded in the state's authority to approve the location and routing of oil pipelines.

*Olympic Pipe Line Co. v. City of Seattle*, relied on by Plaintiffs, also demonstrates that the Pipeline Safety Act's preemption clause is limited to safety standards—without abridging states' powers to control pipeline routing or location across sovereign lands. 437 F.3d 872, 874-76 (9th Cir. 2006). *Olympic Pipe* concerned standards governing *how* a pipeline would operate, not *where* it would operate. *Id*. In *Olympic Pipe*, the city sought to impose certain operational and testing conditions on a pipeline through a franchise agreement. *Id.* at 874-76. The district court concluded that the demand for testing conditions and other safety measures were more "regulatory" than "proprietary" and were therefore preempted by the Pipeline Safety Act. Here, the public trust doctrine is proprietary in that it implicates state ownership over state sovereign lands. *Olympic Pipe* therefore supports the conclusion that the Pipeline Safety act does not preempt states from acting on public trust concerns. *See*, *e.g.*, *Marine One, Inc. v. Manatee Cnty.*, 898 F.2d 1490, 1492 (11th Cir. 1990) (discussing connection between a state's proprietary powers over lands and the public trust doctrine).

Nor does *Kinley Corp. v. Iowa Utilities Bd.* support the Plaintiffs' argument. In *Kinley*, the court held that certain state law provisions were "so related to federal safety regulations that they

are preempted by the [Pipeline Safety Act] with respect to interstate hazardous liquid pipelines." 999 F.2d 354, 360 (8th Cir. 1993). But importantly, the court did not find that the state's "environmental and damages remedies provisions" were preempted." *Id.* Instead, the court found that those provisions were not severable from the preempted provisions and were therefore preempted as well. *Id. Kinley* therefore stands only for the proposition that state regulations governing the way pipelines operate are preempted.

In sum, there is no support for the assertion that the Pipeline Safety Act expressly preempts an attempt by a State to exercise its public trust authority to control who may use state submerged lands and how they may use them. This case does not concern a state agency or other regulatory body seeking to regulate how a pipeline that happens to be on public trust land must operate; instead, it concerns a state seeking to protect an inherent aspect of state sovereignty from incompatible private uses of public trust lands in the first place.

**CONCLUSION**

Nothing in the Pipeline Safety Act preempts the application of state law to the issues here. For these reasons, the State Amici urge the Court to reject Plaintiffs' preemption claims.

KEITH ELLISON
*Attorney General of Minnesota*

*/s/ Oliver J. Larson*

Oliver J. Larson
Ryan V. Petty
Assistant Attorneys General
Minnesota Attorney General's Office
445 Minnesota St., Ste 900
Saint Paul, MN 55101
(651) 757-1265
oliver.larson@ag.state.mn.us
ryan.petty@ag.state.mn.us

[Additional signatures on next page]

*And:*

**FOR THE STATE OF DELAWARE**
KATHLEEN JENNINGS
*Attorney General*

**FOR THE STATE OF ILLINOIS**
KWAME RAOUL
*Attorney General of Illinois*

**FOR THE STATE OF MARYLAND**
ANTHONY G. BROWN
*Attorney General*

**FOR THE COMMONWEALTH OF MASSACHUSETTS**
ANDREA JOY CAMPBELL
*Attorney General*

**FOR THE STATE OF NEW JERSEY**
MATTHEW J. PLATKIN
*Attorney General*

**FOR THE STATE OF NEW MEXICO**
RAÚL TORREZ
*Attorney General*

**FOR THE STATE OF NEW YORK**
LETITIA JAMES
*Attorney General*

**FOR THE STATE OF OREGON**
DAN RAYFIELD
*Attorney General*

**FOR THE STATE OF WISCONSIN**
JOSH KAUL
Attorney General

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing Amius Brief was served on all parties of record via the ECF filing system on September 12, 2025.

/s/ *Oliver J, Larson*
Oliver J. Larson
Ryan V. Petty
Assistant Attorneys General
Minnesota Attorney General's Office
445 Minnesota St., Ste 900
Saint Paul, MN 55101
(651) 757-1265
oliver.larson@ag.state.mn.us
ryan.petty@ag.state.mn.us
*Counsel for State Amici*
